FARMERS' LOAN AND TRUST CO., *vs.* COMMERCIAL BANK.

| 11    207
| 54 LRA  332

APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard March 16.]                    [Decided June 4, 1860.

*Chattel Mortgage—Conveyance—Railroad.*

Although a mortgage purporting to convey personal property thereafter to be acquired by the grantor, does not pass any title to the grantee, without some new act by the grantor, after the property is acquired, assenting to the conveyance, yet, if the grantor after such property is acquired surrenders the possession of it by deed or otherwise to the grantee, that would be such a new act as would confirm the conveyance.

A railroad mortgage granted the "railroad with its superstructure, track and all other appurtenances made or to be made," also, all and singular their rail road furniture, including engines, tenders, cars of every description, tools, *materials* machinery, *and every other kind of personal property which shall be used for operating said rail road."* Held that there was nothing in the mortgage purporting to grant property thereafter to be acquired by the company, except so far as it should become appurtenant to, or be used in operating the road. And that certain rail road chairs, afterwards acquired by the company, but never used in the construction of the road, were not appurtenant to it nor used in operating it; and therefore the mortgagee had no title, although after such chairs were acquired, the company surrendered possession of the road and the mortgaged property to the mortgagee.

The doctrine of *Pierce vs. Emery*, 32 N. H., 484, that where a railroad company mortgages its entire road and all its franchises, that any after acquired property will pass to the mortgagee as an incident to the franchise of acquiring property, if correct at all, cannot be applied to a case where several mortgages are given on separate divisions of the road.

*Chynoweth vs. Tenney, et al.*, 10 Wis., 397, considered and approved.

The facts in this case are sufficiently stated in the opinion by the court.

*Cary & Pratt and M. H. Carpenter* for the defendant.

*Strong & Fuller* for the plaintiff.

*By the Court*, PAINE, J.   This action was brought by the respondent against the appellant, to recover possession of fifteen thousand rail road chairs, being the irons used to fasten down the rails.   The complaint avers *that* they were the property of the plaintiff, and that the defendant unjustly detained them, &c.   The answer contained a general denial, and averred property in the defendant.

It appears that the Loan and Trust Company held the first mortgages upon the eastern and western divisions of the Racine and Mississippi Rail Road Company; the eastern comprising that part of the road within the state of Wisconsin; and the western, that part within the state of Illinois.   These mortgages were given to secure bonds issued by the company and proceedings were taken to foreclose the mortgage on the eastern division, in the U. S. district court for Wisconsin. While this foreclosure suit was pending, a settlement was made between the Trust Company and the Railroad Company, by which the latter executed to the former a deed of surrender of both divisions of the road and all the property covered by the mortgages, to hold upon certain terms and conditions specified in the instrument.   The company claimed title to the chairs in question, through these mortgages, or one of them, and this deed of surrender.

While the foreclosure suit was pending and before the execution of the deed of surrender, the directors of the railroad company passed a resolution authorizing the execution of a chattel mortgage upon the rolling stock and personal property of the company, and a bond in the penal sum of $500,000 to Henry J. Durand and others, most of the directors, to indemnify them against indorsements made for the company. These instruments were executed, and by virtue of them Durand took possession of the chairs in question, and sold them to the Commercial Bank, he being at the time president of the railroad company, president of the bank, chattel mortgagee and agent of the other chattel mortgagees, and endorser on the note upon which the amount for which they sold was to be applied.

Several questions, of very great interest and importance, were discussed upon the argument, involving the power of the railroad company, to execute the mortgages in question, and the power of the Loan and Trust Company to be a party to such an instrument as the deed of surrender, and to take possession of, and operate a railroad in this state.

But from the view we have taken of the case, it becomes unnecessary for us to decide any of these questions. The right of the plaintiff to recover in this case depends on its title to the property under these conveyances. If, therefore, it did not pass to the plaintiff by the mortgages, or the deed of surrender, the action fails. And we think it did not. It appears from the evidence that these chairs were acquired by the company subsequently to the execution of the mortgages to the Loan and Trust Company.

In the case of *Chynoweth vs. Tenney et al.*, decided at the last term, 10 Wis., 397, we held that a chattel mortgage was inoperative to pass any title, either legal or equitable, to any specific property to be acquired by the grantor after the execution and delivery of the instrument, and that such a con-

veyance amounted to no more than a license or executory contract, requiring some new act by the grantor, confirming the conveyance, after he had acquired the property, in order to vest the title to it in the grantee. In this case, if the chairs were fairly included in the language of the mortgage, perhaps the execution and delivery of the deed of surrender would constitute a new act, sufficient to vest the title in the Loan and Trust Company, provided the title had not been previously divested from the railroad company, by the sale to the defendant, under the chattel mortgage.

But we do not think the chairs in question were included in any language used in the mortgages to the Trust Company. The mortgages convey the "railroad, with its superstructure, track, and all other appurtenances, made or to be made," &c. But these chairs never became appurtenant to the road. They were never used in its construction, but were lying on the ground, in stacks, when taken possession of by Durand, under the chattel mortgage. To be appurtenant, they must belong to, or be a part of the principal thing to which they are appurtenant. 1 Sumner, 495; Burrill's Law Dictionary, title, "Appurtenances." Materials simply purchased and taken upon the grounds for the purpose of constructing a road, can in no just sense be said to thereby become appurtenances.

There is no other language including them, unless it be the following: "And also all and singular, their railroad furniture, including engines, tenders, cars of every description, tools, *materials*, machinery, *and every other kind of personal property which shall be used for operating said railroad.*" It is obvious that if included at all by this clause, it must be either as "materials," or by the words, "every other kind of personal property," &c. Now, the words, "which shall be used for operating said railroad," either relate to all the kinds of property specifically named, as well as to the "other personal prop-

erty," or they relate solely to the latter. If they relate to all, then the word "materials" would be limited by them, so as to mean only such materials as should be "used in operating the road." But these chairs were never so used. On the contrary, they were only purchased with the intention to use them in the construction of the road, but were never, in fact, used for any purpose. For the same reason, the chairs could not be included within the words, "every other kind of personal property," for this is clearly limited to such as should be used in operating the road. And if this limitation extends only to such "other personal property," then there is no language used with reference to those kinds of property specifically named, which includes such as should be thereafter acquired. Consequently, the word "materials" must be held to relate only to such materials as the railroad company then had, and which were capable of being conveyed. Inasmuch, therefore, as the only language from which any intention could be derived to pass after acquired property, clearly limits it to such as should be "used in operating the road," and as these chairs were after acquired property, and never so used, we think they were not included by the language of the mortgage, or the deed of surrender.

And this construction is strengthened by observing other parts of the instrument. As before shown, it grants appurtenances, "made and *to be made*;" it grants "all the rights of way now acquired and obtained, *and hereafter to be acquired and obtained*;" showing that the parties clearly understood that the words of their grant were to be construed as relating to things then in existence, capable of being granted, unless they used language expressly extending to such as should be afterwards acquired. And when they come to speak of the personal property, they use none indicating such an intention, except with the limitation already mentioned, which excludes the property in question. There is no language in the

instrument which purports to convey materials to be there-
after acquired, to use in constructing the road. It would have
been easy to insert such, if the parties had intended it. Not
having done so, we must presume they did not intend to give
it such effect. *Tapfield vs. Hillman,* 64 E. C. L., 243.

We are aware that there are cases which have held that
where there is lawful authority to mortgage a railroad or
canal, or other similar public work, as an entire thing, and
such mortgage is executed, it will cover parts of the thing
mortgaged which may have been acquired or constructed
after its execution. But this, so far as it relates to such after
acquired property as actually becomes a part of the original
thing mortgaged, stands upon the doctrine of accession, which
prevails in ordinary mortgages, where improvements are made
upon real estate mortgaged, which become a part of the realty,
or where repairs are made on an article of personal property.
But that principle cannot apply here, for the reason already
stated, that this property never was attached to or became a
part of the road.

The case of *Pierce vs. Emery,* 32 N. H., 484, also held that
where a statute authorized a railroad corporation to mortgage
its road and property, with all its chartered rights and fran-
chises, and a mortgage was executed in pursuance of it, it
would attach to subsequently acquired property as soon as
the title vested in the company. But this was placed upon
the express ground, that the property would pass as incident
to the franchise to acquire property, which franchise was
mortgaged, by the authority of the statute. And the court
expressly says, that except for the statute, the corporation
would have had no power to make a mortgage that would
have had such effect. And they furthermore place it upon
the ground that the mortgage covered the entire road, and all
the franchises of the company, so that on a sale under the
mortgage, the original company would be effectually extin-

guished. And we do not see how the doctrine can be sustained upon any other ground. And the court, in that case, clearly intimates that it could not be applied to a mortgage of a part of the road, though their statute expressly provided for such a mortgage. They intimate that such a division of the franchises of a company would be impracticable.

We do not see, therefore, that we can apply the doctrine of that case here, even if it should be conceded to be sound in itself, because here the property and road of this company extends from Racine into the State of Illinois. Our general railroad law authorizing railroad companies to mortgage their property, and franchises was passed in 1856, after the execu tion of the mortgage on the eastern division, which includes all in this state. It contains a clause providing that it should be held applicable to mortgages already given. We do not deem it necessary to inquire into its effect further than to say, that it could not do more than to render valid the mortgage of the company, including the franchises. It appears, also, from the case, that the Illinois charter granted the power to mortgage the franchise. But conceding this power as to both divisions of the road, we cannot see that the doctrine of *Pierce vs. Emery*, can possibly be applied to it. Because after the company had mortgaged one division with their franchises, they would still retain the franchise, of acquiring property with respect to the other division. And consequently if they did acquire property subsequently to the mortgage, it would not necessarily pass as incident to the mortgaged franchise of acquiring property. Nor do we think the fact that both divisions were here mortgaged to the same company, varies the matter. If this property passed, as incident to the mortgaged franchise, conveyed by one of these mortgages, we must be able to determine which one. We must be able to determine it in the same way that we would if the mortgages were to different parties. And it seems impossible

to do this. It seems impossible to say, in favor of either mortgage, that the subsequent property was not acquired by virtue of the franchise mortgaged by the other.

We think, therefore, that the rule of *Pierce vs. Emery*, cannot be applied to the case of several mortgages on different divisions of the same road. It would be productive of too great confusion and uncertainty to be adopted as a rule concerning the title to property. And it seems to have been substantially overruled by a subsequent case in the same state, where the court deny the doctrine that the property of a railroad company can be considered as an incident to its franchise. *B. C. and M. R. R. vs. Gilmore*, 37 N. H., 418. We think, therefore, that the title to these chairs did not pass under the mortgages to the plaintiff, and that it *is either in the railroad company or in the defendant, and which it is unnecessary to determine in this action.*

The court erred in its instruction to the jury upon this point, and the judgment is reversed with costs, and the cause remanded for a new trial.