THE FARMERS' LOAN AND TRUST COMPANY VS. CARY.

FARMERS' LOAN
& TRUST CO.   The Racine & Mississippi R. R. Co., for the purpose of raising money to construct
v.            their road, executed to the *Farmers' L. and T. Co.*, in September, 1855, a
CARY.         mortgage upon the eastern division of their road (in Wisconsin), and in
              June, 1856, a mortgage upon the western division (in Illinois), the mortga-
              ges describing the property as "all their railroad with its superstructure,
              track and all other appurtenances, made or to be made," (in each division
              respectively), with all their rights of way, including the depots and all other
              structures, &c., and the lands on which they were or should be erected, "and
              all the franchises, privileges and rights of the railroad company in and to
              the same," it being stipulated that nothing therein should prevent the rail-
              road company from collecting money due it on stock subscription or other-
              wise, "provided no default shall [should] have been made in the payment of
              the interest or principal of the bonds secured by such mortgages." In Decem-
              ber, 1858, the directors of the railroad company passed a resolution that all
              its income from that date should be appropriated, 1st, to pay the operating
              expenses of the road and necessary repairs; and 2d, to the interest due and
              to become due on the mortgage bonds on the eastern division of the road.
              On the 10th of May, 1859, the railroad company, having made default in the
              payment of interest on its bonds, executed to the *Farmers' L. & T. Co.* a
              deed of *surrender* of the mortgaged property (by the same description used
              in the mortgages), authorizing the *Farmers' L. & T. Co.* to operate the road
              and receive its income, paying out of the same, first, the wages due to opera-
              tives, and next, taxes and liens prior to said mortgages; the *L. & T. Co.*
              agreeing to advance money to complete the road to a certain point, and to
              pay the balance so due to operatives out of the first earnings of the road, and
              to postpone the interest accrued and to accrue on said bonds until the road
              should be so completed and the advances therefor refunded. In September,
              1859, the railroad company assigned to C. in payment for legal services per-
              formed before the 10th of May, 1859, its claim upon the U. S. for compensa-
              tion for carrying the mail *prior* to that date. The road had been completed
              to the point named in pursuance of the terms of surrender, and the net earn-
              ings of the road, though more than enough to pay the amount due from the
              railroad company to its operatives at the date of the surrender, were not suf-
              ficient to pay that amount, and the amount paid by the *F. L. & T. Co.* for
              taxes and liens prior to said mortgages, and its advances to complete the road
              were not repaid. *Held,* that the mortgages did not in terms cover the income
              or earnings of the road; and that the deed of surrender did not carry with it
              the claim so assigned to C.

ERROR from the Circuit Court for *Milwaukee* County.

This case was submitted to the circuit court upon a state-
ment of facts agreed upon by the parties, which was in sub-
stance as follows: ·

"The Racine and Mississippi Railroad Company had a
contract with the U. S. for conveying the mail from Racine
to Freeport, in Illinois, and carried the mail under said con-
tract from July, 1858, to the 10th of May, 1859. They re-

June Term,
1860.

FARMERS' LOAN
& TRUST CO.
v.
CARY.

ceived from the government pay for such services, up to and including the 31st day of March, 1859, except a balance of $133 93, on account of short mileage, which has since been adjusted. On the 21st day of September, 1859, the railroad company assigned to the plaintiff (*Cary*) all moneys due the company on said contract, for all services up to said 10th day of May, 1859, intending thereby to assign the above amount allowed for short mileage, and the amount earned from April 1st to May 10th, 1859. On said 10th day of May, 1859, said railroad company surrendered said railroad, together with its appurtenances, to the defendant (*The Farmers' Loan and Trust Company*) as trustee of the first mortgage bondholders of said road; and the deed of surrender purported to surrender said road and all property covered by said mortgage, and a copy thereof is hereto annexed, marked "A." It is agreed that said deed of surrender was executed to carry out an agreement made between said railroad company and the defendant, and was based upon a proposition submitted by said railroad company to said defendant, which proposition forms a part of said deed of surrender. And it is admitted that the road has been completed to Freeport since said surrender, and in pursuance of its terms, and that the advances made to complete the road to Freeport are not yet repaid, and that the earnings of the road over and above operating expenses since the surrender, amount to more than the whole sum due from the railroad to operatives and employees at that time, but are not equal to said amount and the amounts paid by the defendant for taxes and debts contracted for right of way and depot grounds, and which were liens prior to the mortgage to the defendant. The mortgage on the eastern division of said road bears date September 1st, 1855, and was given to secure the payment of 680 bonds of $1,000 each, with interest at 8 per cent., payable semi-annually, and default was made in the payment of the interest on said bonds which became due February 1st, 1858, and all subsequent interest remains wholly unpaid. A copy of the mortgage is hereto annexed, marked " B." At the time of said deed of surrender a suit was pending in the United States district court to foreclose said mort-

gage for non-payment of interest, and on the 4th day of May, 1859, William M. Perine, treasurer of said company, was, by an order of said court, appointed receiver of the earnings of said road in said, suit, but never executed any bond or made any report to said court as such receiver, the controversy and suit having been settled on the said 10th day of May, by the execution of said deed of surrender, and yielding possession to the plaintiff; and a decree of strict foreclosure was entered by consent, with leave to the railroad company to redeem in five years, as provided in said deed of surrender.   Schedule " C," hereto annexed, is a copy of the mortgage on the Illinois portion of said road.   After defendant came into the possession of said road and property as aforesaid, to wit, on  or about the 25th day of September, 1859, and after the close of the quarter ending on the 30th of June, 1859, the said defendant received from the government of the United States the sum of $577 77, for said mail service so performed by the Racine and Mississippi Railroad Company, between the 1st day of April and the 10th day of May, 1859.   And on or about the first day of October, 1859, said defendant received the further sum of $133 93, for services performed between the 1st day of July, 1858, and the 31st day of March, 1859, on account of short mileage theretofore allowed, and that it had no other warrant or authority for receiving the same than the mortgage and deed of surrender aforesaid, except what can be inferred (if anything) from the other facts herein stated.

"That, at the time of said surrender, William M. Perine was the treasurer of said railroad company, and still remains such treasurer, and that all drafts for mail service due the railroad company came to him up to the 10th day of May last; that since said surrender said defendant has continued said Perine in the same capacity as formerly, until quite recently, and that the draft or certificate for the moneys in question in this action came through him the same as was the practice prior to said surrender.   That since said surrender said defendant has performed the mail service required under said contract, and that the the draft or certificate for the money in question was a draft for the said

money, together with other moneys due said defendant for such subsequent mail service, and that when it was received by said William M. Perine it was passed over to and used by said defendant without the knowledge or consent of said railroad company or said plaintiff. That no officer of said railroad company, except Perine, nor the plaintiff, knew that said money had been received by the defendant, until they were so informed by the defendant's agent, about the 1st of November, 1859.

June Term,<br>1860.<br><br>FARMERS' LOAN<br>& TRUST CO.<br>v.<br>CARY.

" On the 8th of December, 1858, the board of directors of said railroad company passed the following resolution, to ·wit: ' *Resolved*, That all the income and receipts of this company hereafter received be, and the same are hereby appropriated as follows, to wit: .First. To the payment of the operating and running expenses of the road, and the making of such repairs as are necessary to preserve and protect the road. Second. To the payment of the interest now due and to become due on the first mortgage bonds of the eastern division of the road.'

" It is also admitted that said railroad company assigned said moneys so due it, to the plaintiff, in part payment for his services as attorney and counsel of said railroad company, performed by him between the first day of January, 1859, and the said 10th day of May, 1859, during all which time the plaintiff was in the employ of said railroad company as such attorney and counsel. It is further admitted that the Racine and Mississippi Railroad Company did not, in fact, surrender and deliver over to the defendant, on the said 10th day of May, 1859, or at any other time, any notes, accounts, bonds or claims due said railroad company. And it is further admitted that the plaintiff notified the defendant on the said 21st day of September, 1859, of the assignment of said claim to him, and afterwards, on the 1st day of November, 1859, demanded of said defendant that it should pay to him said sums of money, amounting together to the sum of $711 70, which defendant then and there refused to do, and ever since has refused and still refuses; wherefore the plaintiff demands judgment for the said sum

of $711 70, with interest thereon from the said 1st day of November, 1859."

The mortgage on the eastern division of the road, referred to in the above statement, after reciting that said railroad company was engaged in constructing a railroad from Racine to Beloit, and for that purpose needed to borrow $680,000, and to secure the payment thereof, designed to issue bonds for that amount, bearing interest at 8 per cent., payable semi-annually, for the better securing of said bonds, granted, bargained, &c., to the said *Farmers' Loan and Trust Company*, the property of said railroad company, described as follows : "All their railroad with its superstructure, track and all other appurtenances, made or to be made in the state of Wisconsin,   *   *   *   and all their right and title to the land on which said railroad is and may be constructed, together with all rights of way now acquired or hereafter to be acquired by the said parties of the first part, and *including the depots*, engine houses, shops and other constructions at the city of Racine aforesaid, and at the said town of Beloit, and at all other places along the line of the said railroad, and the lots of land on which the same are or may be erected, and all the pieces of land which shall be used for depot and station purposes, with the appurtenances, and all the embankments, bridges, viaducts, culverts, fences and structuary thereon, and all other appurtenances belonging thereto, and all the franchises, privileges and rights of the said parties of the first part, of, in and to or concerning the same, and also all and singular their railroad furniture, including, engines, tenders, cars of every description, tools, materials, machinery and every other kind of personal property which shall be used for operating said railroad ;" but it was stipulated that nothing therein contained should operate to prevent the parties of the first part from selling, hypothecating or otherwise disposing of, any bonds or other securities received in payment of stock, or otherwise, or any bonds or other property of the company not necessary to be retained for the roadway, depot grounds and stations, nor required for the construction or convenient use of their road, nor from collecting moneys due the company on stock subscriptions or

June Term,
1860.

FARMERS' LOAN
& TRUST CO.
v.
CARY.

otherwise, provided they should diligently proceed to collect and faithfully to apply all such means to the construction and equipment of their said railroad, and provided also that no default should have been made in the payment of the interest or principal of any of the above described bonds. The mortgage contained also a provision, that upon failure of the railroad company to pay the interest on any of the bonds when due and demanded, the party of the second part, after sixty days from such default, upon request of the owner of said bond, might take possession of all or any part of the property mortgaged, and use and employ the same, making all needful repairs and additions, and after deducting the expenses of such use and additions, apply the proceeds to the payment of the principal and interest of all of said bonds remaining unpaid. A copy of one of the bonds is set forth in the mortgage. It contains a promise that the railroad company will appropriate each year out of the net earnings of the road, after payment of the interest on the debt of the company, a sum equal to 1 1-2 per cent. on the amount of the bonds secured by said mortgage, as a sinking fund for the extinguishment of the bonds.

The mortgage on the western division of the road, in Illinois, executed June 2, 1856, uses, in reference to that division, the same language in its description of the property mortgaged, and contains the same provisions. The bonds secured by this mortgage contained the same stipulation as that set forth in the other mortgage, in reference to the appropriation of the earnings of said railroad company.

The deed of surrender referred to in the above statement of facts, after reciting the execution of the mortgages above mentioned, and that the railroad company had been unable to provide for the interest on the bonds secured thereby, declared, that with the view of avoiding litigation and enabling the holders of the bonds to provide for the extension of the road, and to have the control and management thereof, until they could be repaid their advances and arrears of interest, the said railroad company granted, transferred and surrendered to the *Farmers' Loan and Trust Company*, all the said railroad, from its eastern terminus at Racine, to its contem-

June Term, 1860.

FARMERS' LOAN & TRUST CO.
v.
CARY.

plated western terminus at Savanna, [in Illinois], with, &c., [here followed a description of the property in the same terms as were used in the two mortgages], to have and to hold the beforementioned premises, property, rights and franchises as fully as the same were granted by the mortgages, and as fully as they existed and were described therein, to the parties of the second part, as trustees under said mortgages, for the purposes declared therein, and with all the rights therein conferred, and all other rights which by law appertain to mortgagees in possession; and the railroad company thereby authorized said *Farmers' Loan & Trust Company* to operate said road and make all needful repairs, alterations and additions, and especially to extend said road to Freeport, Illinois, and for that purpose to borrow money upon the credit of the income and receipts of said road; to receive all the income, receipts and revenue of said road, and apply the same after payment of current expenses, first, to the payment of arrears due to operatives on the road, and after that to the clearing off of liens prior to said mortgages, and taxes, and to the repayment of all loans and advances for the extension of the road, and the payment of interest due or to become due on the loans secured by the mortgages. It was also recited that the deed of surrender was made in pursuance of an arrangement embodied in certain resolutions and letters, copies of which are attached to the deed, and which were, in substance, as follows: First. A resolution of the directors of the railroad company, passed about the 14th of April, 1859, "that the railroad and all other property covered by the first mortgages on both divisions of the road, be surrendered to, and placed under the full control of the *Farmers' Loan & Trust Company*, trustees, provided the bondholders, or a sufficient portion thereof, shall assent to the following stipulations, and make such arrangements as will enable the trustees to carry them out: 1. To contribute the means to complete the road to Freeport, the same to be completed within a reasonable time. 2. To postpone the interest accrued and to accrue on the bonds, until the road is so completed, and the means advanced for such purpose are refunded, with the interest thereon. 3. The

trustees to pay off the balances due the operatives of the road
for wages, out of the first net earnings of the road.    4. When
the advances for completing the work, as above mentioned,
and for paying off any incumbrances, or otherwise protect-
ing the property and managing the business, are paid, with
the interest thereon, together with all accrued interest on all
the bonds, and interest thereon, the road and other property
shall revert to the company, provided all the matters shall
be arranged within five years from the time of the comple-
tion of the road to Freeport; the company to assent to such
decree of foreclosure, or any other legal proceedings which
may be necessary for the complete safety of the bondholders
and parties advancing money to complete and manage the
road, which shall not conflict with the conditions herein pro-
vided.    Second.  Communications from the president of the
*Farmers' Loan & Trust Company* and the holders of a large
portion of the bonds on each division of the road, consenting
to accept the surrender on the terms proposed.

Upon this state of facts, the circuit court found that the
plaintiff was entitled to judgment for $742 85, with costs;
to which finding the defendant excepted as being contrary
to the law and the facts.    Judgment on the finding.

*Strong & Fuller*, for plaintiff in error, after referring to their
argument in *Dinsmore vs. The Racine Co. Bank*, 12 Wis.,
649, said that property is often conveyed by some general
term, as a house, mill, ship, railroad, &c., *eo nomine*, in which
cases courts must construe the meaning of the term used, and
are not restrained from carrying that meaning into effect by
the strict rules relating to real estate where the conveyance
is by metes and bounds; and cited *Conklin vs. Parsons*, 1
Chand., 240; *Daniels vs. Pond*, 21 Pick., 367; *Goodrich vs.
Jones*, 2 Hill, 142; *Kittredge vs. Woods*, 3 N. H., 503; *Farrar
vs. Stackpole*, 6 Greenl., 154; *The Dundee*, 1 Hag., 109; 5 B. &
C., 156; *Woods vs. Russell*, 5 B. & Ald., 942; *Brough vs. Whit-
more*, 4 Term R., 206; *Briggs vs. Strange*, 17 Mass., 405;
*Holly vs. Brown*, 14 Conn., 256.    Equity, which considers
that already done which has been agreed to be done, some-
times treats personal property as real estate, and *vice versa.*
*Craig vs. Leslie*, 3 Wheat., 563; *Fletcher vs. Ashburner*,

June Term,
1860.

FARMERS' LOAN
& TRUST CO.
v.
CARY.

1 Bro. Ch. Cas., 497; Story's Eq. Jur., §§ 790–2.    The mortgages therefore being of the entirety of the prop- erty of the company, covered of course the income arising from that property.    If they were mortgages of the comple- ted part of the road only, they would cover the property in question, as it was the earnings of the completed part of the road.    If this assignment had been made before default in payment of the interest upon the mortgages, it would have been good.    But the company had expressly covenanted not to collect any money due to it after such default.    The plaintiff was not a *bona fide* purchaser without notice.    He took the assignment for a precedent debt, and had notice of the contract of the company and the defendant, as the mortgage was on record.    2. The deed of surrender per- fected the mortgages.    By this deed the defendants were *bona fide* purchasers, or mortgagees in possession, having agreed to advance money, which they were not bound to do by the terms of the mortgage.    The defendants having agreed by the deed to pay the amount in arrear due the employees, and knowing the resolution of the board of directors, which was on record, that the earnings should be so appropriated, have the right to have the same so appropriated.    If this suit had been brought by the railroad company, the defend- ants' claim against them for advances would be the proper subject of set-off; although the defendants agreed to post- pone their claim for interest, they have not postponed their claim for advances.    The railroad company would not be permitted to recover from the defendants money which equi- tably belonged to the operatives, which has come legally into the possession of the defendants, and which the defend- ants, acting as agents or trustees for the railroad company, have virtually applied to the payment of those operatives.

*Cary & Pratt*, for defendant in error, contended that the railroad company was not authorized to mortgage its income and resources, and that the mortgage did not, by its terms or otherwise, cover either.    The counsel for the plaintiff in error claims this chose in action by virtue of a proviso in the mortgage; but the proviso could not extend the mortgage over property not covered by the granting clause.    2. By

the deed of surrender no money or choses in action were surrendered or intended to be. After accepting the deed of surrender, the *Trust Company* had no further claim upon the railroad company. Its demands were satisfied for the time being.

*By the Court,* Cole, J. After the expression of our views in the cases of *The Farmers' Loan & Trust Company vs. The Commercial Bank*, [11 Wis., 207], and *Dinsmore vs. The Racine and Mississippi R. R. Co. et al.*, [12 Wis., 649], as to the terms and conditions of the mortgages given by the Racine and Mississippi R. R. Co. to the Farmers' Loan & Trust Co., and also upon the effect of the deed of surrender under which the Farmers' Loan & Trust Co. took possession of the railroad and its property, and operates the same, we need only say that we do not think the plaintiff in error can hold the claim due the railroad company for carrying the mail, which claim was assigned by the railroad company to the defendant in error in payment of his debt. We do not think the *Farmers' Loan & Trust Co.* could hold this chose in action under its mortgages or under the deed of surrender. The mortgages in terms do not cover the income or earnings of the road, and the deed of surrender did not carry with it this claim for money previously earned, and which was afterwards assigned to the defendant in error.

The judgment of the circuit court is affirmed, with costs.

Note.—At the time the mortgage was given to the *Farmers' L. & T. Co.* upon the eastern division of the road, there was no statute in force in this state authorizing a railroad company to mortgage its franchises, nor any law giving to a mortgage made by a railroad company any greater effect than was given to a mortgage by a natural person. Per Cole, J., in *Dinsmore vs. Rac. & Miss. R. R. Co.*, 12 Wis., 657. See also *Farmers' L. & T. Co. vs. Com. Bank*, 11 Wis., 207. —Rep.