14      57
54 LRA 763n

## BEAN VS. FISHER and others.

A judgment should not be set aside for the purpose of allowing a person whose rights are not affected by it to come in and be made a party to the action and set up a defense.

January Term, 1861.

Bean
v.
Fisher et al.

Thus, where in an action for the foreclosure of the rights of the defendants under a contract for the purchase of land, a judgment was rendered directing that the plaintiff, upon the payment of the purchase money by a given day, should convey a part of the land to A, the original purchaser, and the residue to B, to whom the original purchaser had made a deed for it, it was error for the court to set aside the judgment and allow a third person to come in and defend on the ground that he had a mortgage on the land executed by A prior to the conveyance to B, and had entered into possession of the land under a deed of surrender from A and a decree for the strict foreclosure of the mortgage.

APPEAL from the Circuit Court for *Rock* County.

In April, 1856, *Bean* made a contract to convey to *Fisher* and *Goodhue* certain land in Beloit, upon the payment of $14,000 in three months. *Fisher* and *Goodhue* acted under the direction of the *Racine & Mississippi Railroad Company* in making the purchase, and immediately assigned the contract to that company. The present action was brought by *Bean* on the 2d of September, 1858, against *Fisher, Goodhue,* the *R. & M. Railroad Company,* and one *Washburn,* to compel the payment of an unpaid balance of the purchase money, or upon default of payment, to foreclose the equitable rights of the defendants under the contract. On the 28th of December, 1859, before the final hearing, *J. J. Bushnell* was, on his petition, permitted to come in as a defendant, and filed an answer stating that on the 20th of September, 1858, the *R. & M. Railroad Company* conveyed to him, by deed without covenants, a certain part of the premises described in the complaint, and promised at the time to pay to *Bean* the balance due of the purchase money, and praying that the railroad company should be adjudged to pay such balance, and that *Bean* should thereupon convey to said *Bushnell* the portion of the premises so claimed by him. The petition of *Bushnell* alleged that there were judgments which would be liens upon the property if it should be conveyed directly to the railroad company. The cause was heard on the same day that *Bushnell's* answer was filed, and the court found as facts that there was due to the plaintiff upon the contract of sale $5,801; that the railroad company had quit-claimed to *Bushnell* a certain portion of the premises described in the complaint, as stated in his answer; and that before the com-

mencement of the suit, the plaintiff had delivered to the defendant *Washburn* a deed to the *Racine & Mississippi Railroad Company* for all of said premises, to be delivered by him to said company upon his receiving the balance of the purchase money.    The court, on the same day, adjudged, among other things, that the *R. & M. Railroad Company* should, within thirty days, pay into the clerk's office for the plaintiff, the sum so found due to him, with interest, &c., and upon such payment being made, the deed left in the hands of *Washburn* should be "void," and the plaintiff should thereupon convey to *Bushnell* the portion of said land described in his answer (free of incumbrances made or suffered by the plaintiff), and should quit-claim the residue of the land to said *R. & M. Railroad Company;* but in default of such payment by the railroad company, then said *Goodhue* and *Fisher* should pay the sum due the plaintiff, and the plaintiff should thereupon convey all the land to them, or to said *Fisher*, if he alone should make the payment.    On the 20th of January, 1860, the *Farmers' Loan & Trust Company* (a corporation existing under the laws of the state of New York), filed its petition in the Rock circuit court, stating that the judgment above referred to affected the title of a portion of the depot grounds of the *R. & M. Railroad Company*, at Beloit; that in 1855 said railroad company executed a mortgage to the petitioner for $680,000 upon the road of said company in the state of Wisconsin, including as well all depots, &c., with the parcels of land on which the same then were erected, as also the pieces of land which should thereafter be used for depots or station purposes, and also upon other property, "which mortgage included the property in question in said suit;" that on the 10th of May, 1859, said railroad company surrendered possession of said mortgaged premises to the petitioner, who had ever since retained possession; that on the 17th of May, 1859, in a suit brought in the U. S. court for the district of Wisconsin, to foreclose said mortgage, a decree for strict foreclosure was entered in favor of the petitioner; that the railroad company is insolvent and the mortgaged premises are an insufficient security for the mortgage debt; that the petitioner had all

the while expected to pay the amount due to the plaintiff *Bean*, but had been assured by Messrs. Strong & Fuller, who were the attorneys for *Bean* in said suit, that its interest should be protected without its appearing to make defense, and relying upon that assurance, it had not retained counsel to appear for it therein; that the promise of Strong & Fuller had not been fulfilled, by reason of the unauthorized action of another attorney, who had in their absence appeared for *Bean* and taken said judgment; that the rights of the petitioner were prior to those of *Bushnell*, and if not, *Bushnell* ought to pay his proportion of the amount due to the plaintiff; that the proper security of all parties required that the title to the property should date back to the time when the deed was left as an escrow in the hands of *Washburn*; and that no proof was taken at the time the judgment was rendered, but that the attorney who pretended to act for Strong & Fuller in the case, drew up the judgment and thereby admitted the claim of *Bushnell;* wherefore the petitioner prayed that the judgment might be opened, and that it might be allowed to answer, &c. Affidavits were filed in support of the petition, and upon the hearing of a rule to show cause, &c., the court, on the 27th of January, 1860, made an order setting aside the judgment and the finding on which it was founded, and allowed the *Farmers' Loan & Trust Company* to appear and defend the action; from which order *Fisher* and *Bushnell* appealed.

*Carpenter & Gridley*, for appellants, argued that a railroad company could not mortgage its property and franchises without permission of the legislature (which had not been given to the *R. & M. R. R. Co.*), and cited 6 Eng. L. & Eq., 110; 1 id., 505; 13 id., 516; 41 Eng. Ch., 309; 16 Eng. L. & Eq., 180; 12 id., 224; 17 How. (U. S.), 30; 32 N. H., 480–507; 2 Barn. & Ald., 646; 10 Adol. & Ellis, 351; 14 A. & E. (N. S.), 902; 12 Wheat., 46, 54; 5 B. Mon., 1; 9 S. & M., 394. They also argued that the *Farmers' Loan & Trust Co.*, a banking corporation in New York, was not competent to receive such a mortgage, and exercise under it franchises grantable only by the state of Wisconsin (6 Conn., 304; 1 Paige, 214; 8 Johns., 330; 15 N. H., 317, 330); and

that the interest of the railroad company in the contract made with *Bean after* the execution of the mortgage, did not pass by it, even if the mortgage could be upheld.

*William & Achilles,* for the *Farmers' Loan & Trust Co.:*

1. No exception was taken to the order appealed from, and no bill of exceptions has been made in the case, and hence there is nothing for the court to review. 2. The *F. L. & T. Co.* had a right to rest upon the assurance of the plaintiff's counsel that their rights would be protected. 3. That company was the real defendant in the case—the only one who was expected to pay the money in question; it was in possession, and the railroad company, being insolvent, had no interest in the matter. 4. *Bushnell* was admitted as a party at the very hour the trial was had, without the knowledge of the *F. L. & T. Co.,* or of the plaintiff's attorneys. 5. If the rights of *Bushnell* were to be determined in the case, the *F. L. & T. Co.* was a necessary party.

*Strong & Fuller,* for *Bean,* contended that the judgment should have been vacated, because it adjudged that the deed in *Washburn's* hands should, upon a certain contingency, be void, and that the plaintiff should make new deeds conveying part of the land free of incumbrance, &c. to *Bushnell,* and the balance to the railroad company—which was in violation of his contract, and which he might not be able to do; and that the judgment was erroneous because it authorized *Fisher & Goodhue,* who had no interest in the property, to redeem on default of the railroad company, and thus make a speculation at the plaintiff's expense.

*By the Court,* COLE, J.    We do not feel called upon to decide in this case the question whether the *Racine and Mississippi Railroad Company* could make in 1855 a valid mortgage of its property and franchises to the *Farmers' Loan & Trust Company.* Because if we assume that the railroad company had the power to make such a mortgage, still it seems to us that the order of the circuit court setting aside the judgment which was entered on the 28th day of December, 1859, and permitting the *Loan and Trust Company* to come in and defend in the action to foreclose the contract

January Term, 1861.

BEAN
v.
FISHER et al.

May 15

given by the respondent to *Fisher* and *Goodhue*, and bearing ing date April 1, 1856, must be reversed. The ground, of course, upon which the *Farmers' Loan & Trust Company* bases its right to come in and defend that action is, that its mortgage carried with it all after acquired property for depot grounds, and that consequenty the quit-claim to *Bushnell* subsequently made by the railroad company was subject to its mortgage. This being so, how were its rights affected by the decree which was made in the cause ? It was not a party to those proceedings, and could not be bound by them. If its mortgage takes precedence of the conveyance to *Bushnell*, or if, in other words, the *Farmers' Loan & Trust Company* has become the owner of the property, franchises and effects of the railroad company, and entitled to take its place in all contracts, we cannot see why that company may not discharge the amount due on the *Bean* contract, and claim the deed from him. What prevents the *Trust Company* from doing this, if its view of the rights which were acquired by the mortgage be correct? We can see no obstacle to the *Trust Company* fully securing all its rights and interests in this manner, and we think it the more regular and proper course of proceeding. Whatever may be the conditions of the judgment entered on the 28th of December, 1859, since the *Loan Company* was not made a party to that suit, it is obvious it cannot be concluded or bound by that judgment. It still has the right to pay off and discharge the *Bean* contract, if it ever had that right, unaffected by the judgment which has been entered. The order, therefore, of the circuit court, setting aside the judgment entered on the 28th of December, 1859, and permitting the *Farmer's Loan & Trust Company* to come in and answer, should be reversed.

Order reversed.