FARMERS' LOAN & TRUST COMPANY VS. FISHER and others.

A railroad company mortgaged all its road with the superstructure, track, &c., and all the title of the company to the land on which the road was or might be constructed, with all rights of way then acquired or thereafter to be acquired, and all depots, &c., and the parcels of land on which they were or should be erected, and all pieces of land which should be used for depot and station purposes, together with all its personal property and its franchises. Afterwards F. and G. purchased certain land for the use of the company for depot grounds, and took a written contract of sale, and for a deed upon payment of the purchase money, and assigned the contract to the company, which took possession of the land and used it for depot purposes, and paid a part of the purchase money.

*Held*, 1. That the lien of the mortgage attached to said land the moment the interest of the railroad company therein was acquired; and no subsequent alienation by that company could displace or impair such lien.

2. That the mortgagee, to whom, upon default in payment of the mortgage debt, possession of the road was surrendered under a deed of trust, had (as a mortgagee in possession, and for the protection of his lien) such an interest as entitled him, upon payment of the balance due on said land contract, to compel the execution of a conveyance by the vendor to the railroad company; and this whether the deed of surrender was valid or not.

3. That a deed having in fact been executed by such vendor, and left in the hands of W. as an escrow, to be delivered to the company on payment by it of such balance, the mortgagee is entitled, on paying such balance, to have said deed delivered and recorded.

4. A judgment having been rendered in an action to which the mortgagee was not a party, that upon such payment being made by the railroad company or said F. and G., the vendor should convey a certain portion of the premises to B., who claimed under a deed from the railroad company executed after said mortgage, the mortgagee is entitled, (as a measure of auxiliary relief, and to prevent a confusion in the title of record,) to an injunction restraining the execution of such deed to B.; and in case it were already executed, would be entitled to a judgment compelling a conveyance from B. to the railroad company.

A complaint alleged that the plaintiff was a corporation existing under certain statutes of New York (which are set out by their titles,) and was authorized to receive the trusts thereinafter mentioned. *Held*, that a demurrer to the complaint as not stating a cause of action, did not raise the question whether the plaintiff was authorized to receive a certain mortgage in trust mentioned in the complaint. The authority was sufficiently averred, under the statute (secs. 4 and 11, ch. 148, R. S.), and was admitted by the demurrer.

APPEAL from the Circuit Court for *Rock* County.

The complaint in this action avers the following facts: On the 1st of January, 1855, the plaintiff was, and ever since has

been, a corporation existing under certain acts of the legislature of New York, (which are set forth by their titles,) and authorized to receive the trusts hereinafter mentioned. On the 1st of July, 1855, and thereafter until August 17, 1860, the Racine & Mississippi railroad company was a corporation authorized to execute the mortgages and trust deed hereinafter mentioned, by virtue of certain statutes of this state and of Illinois, (which are set out by their titles,) and on the day last mentioned *William H. Lathrop*, one of the defendants, was duly appointed receiver of the assets of said company, and qualified as such. On the 1st of September, 1855, said railroad company executed to the plaintiff, in trust for the holders of certain bonds therein described, a mortgage, of which a copy is annexed to the complaint. This mortgage covered all the railroad of said company, with its superstructure, track and all other appurtenances, made or to be made in this state, and all the right and title of the company to the land on which said railroad was and might be constructed, together with all rights of way then acquired or thereafter to be acquired by the company, and the depots, engine houses, shops and other constructions at the city of Racine and at the town (now city) of Beloit, and at all other places along the line of said road, and the parcels of land on which the same were or might be erected, and all pieces of land which should be used for depot and station purposes, &c., and all the franchises and rights of the company in respect thereto, and all its rolling stock and personal property used in operating the road. On the 2d of June, 1856, the company executed to the plaintiff a similar mortgage of that portion of its road which lies in Illinois. All the bonds described in said mortgages were sold and negotiated by the railroad company prior to the 1st of July, 1858. About the 10th of May, 1859, the railroad company executed to the plaintiff a deed of surrender in trust for the holders of said bonds, a copy of which is annexed to the complaint. [The substance of said mortgages and deed of surrender is

fully stated in *Farmers' L. & T. Co., v. Cary*, 13 Wis., on pp. 114–117.] The plaintiff immediately took possession of the property described in said deed, except such as was wrongfully withheld from it by third parties, and has ever since held possession of the same and operated the road. At the time of such surrender the railroad company were indebted for interest over due on the bonds secured by the first mentioned mortgage, in the sum of $68,000, and on those secured by the Illinois mortgage in the sum of $70,000, which amounts are still wholly unpaid; and said company is still further indebted to the plaintiff, for advances made in pursu- ance of the terms of the deed of surrender, in the sum of $200,000; and all the interest which has fallen due upon the bonds since May 10, 1854, and the whole principal of the bonds, remain unpaid. The defendants *John V. Beane, Lucius G. Fisher*, and *William T. Goodhue*, on the 5th of April, 1856, entered into a contract by which *Beane*, in consideration of $1,400 to be paid on the 1st of July of that year, by *Fisher* and *Goodhue*, sold to them certain lands in the city of Beloit in this state (which are described in the complaint), and cove- nanted to execute to them, on said 1st of July, upon the pay- ment of said $1,400, a quit-claim deed for the land. This pur- chase was made by *Fisher* and *Goodhue* for the railroad company, and on said 5th of April they made a written assignment of the contract to the company, in consideration of the assump- tion by the latter of the payments of the money therein men- tioned. The lands so purchased are a part of the depot grounds of said company at Beloit, and were bought for that purpose. On the 2d of September, 1858, *Beane* commenced a suit in the circuit court for Rock county, against said *Fisher* and *Goodhue*, and also against the Racine & Mississippi R. R. Co. and one *Washburn* (who is also made a defendant herein), for the pur- pose of foreclosing said contract; alleging in his complaint that only $10,500 had been paid to him upon said contract; that *Fisher* and *Goodhue* purchased said land as agents of the

railroad company, to be used by it for depot grounds at Beloit; that the company immediately took possession of the same, after such purchase, and made all the payments amounting to the sum above stated; that by a subsequent agreement between *Beane* and the raidroad company, the former was to have interest at 12 per cent. per annum upon the amount due upon said contract; and that in pursuance of said contract he had executed and deposited with said *Washburn* a deed of said premises, running to the railroad company, as an escrow, to be delivered on payment of the balance due on the contract. On the 28th of December, 1858, *Bushnell* (who is made a defendant herein) was permitted, on his petition, to be made a defendant in said suit of *Beane v. Fisher and others,* and filed an answer therein, stating that on the 20th of September, 1858, the railroad company conveyed to him, by deed without covenants, a certain part of the premises described in the complaint of said *Beane,* and promised at the time to pay *Beane* the balance due him of the mortgage money for said premises; and praying that the railroad company should be adjudged to pay said balance, and that *Beane* should thereupon convey to said *Bushnell* the portion of the premises so claimed by him. On the same day that this answer was filed, a judgment was entered in said suit adjudging that the railroad company should, within thirty days, pay into the clerk's office for the plaintiff, the sum of $5,801 found due to him, with interest from the date of the judgment, &c., and upon such payment being made, the deed left in the hands of *Washburn* should be void, and *Beane* should thereupon convey to *Bushnell* the portion of said land described in his answer, and should quit-claim the residue of the land to the railroad company; but in default of such payment by the railroad company, the said *Goodhue* and *Fisher* should pay the sum due the plaintiff, and the plaintiff should thereupon convey all the land to them, or to said *Fisher,* if he alone should make the payment. On the 28th of January, 1860, said circuit court, on the petition of the plaintiff

herein, made an order that the judgment in said suit of *Beane* should be vacated, and that said *Farmers' Loan & Trust Co.* should be made a defendant therein. From this order *Fisher* and *Bushnell* appealed to the supreme court, where the order was reversed. See *Beane v. Fisher and others*, 14 Wis., 57. A motion for a rehearing in that case was denied on the 21st of August, 1861, and on the 11th of September following, the present action was commenced.

The complaint further states that since the plaintiff took possession of the railroad, it has been ready and willing to pay *Beane* the amount due on said contract, upon having the deed in the hands of *Washburn* placed upon record, but had no means of knowing whether *Beane* was entitled to interest at twelve per cent. or only at seven per cent.; and it requested *Washburn* to send the deed to the clerk of said circuit court, to be by him placed upon record when the amount due on said contract should be paid, and stated to him that it (said plaintiff) was ready and desirous to pay the same; but he refused to let the deed go out of his hands without the written consent of *Beane* and the railroad company, and the latter refused its consent. The complaint contained sundry other averments, which it is not necessary to state. Its prayer is, 1. That an injunctional order may be granted restraining the defendants from executing the judgment rendered in said suit of *Beane v. Fisher and others*; restraining *Beane* from executing any conveyance of the premises above described, or any part thereof, to said *Bushnell* or any other person; and also restraining all proceedings in that suit until the determination of this action, or until the further order of the court. 2. That said judgment may be vacated; that an account be taken, and the amount due and unpaid on said contract be ascertained and adjudged; that the plaintiff be permitted to pay that amount to the party entitled to receive it, or to pay it into court, within such time as the court may determine; and that *Washburn* be adjudged to deliver said deed deposited with him as an

escrow, to the clerk of said court, to be recorded in the registry of deeds of said county.

The defendants *Fisher, Goodhue* and *Bushnell* demurred to the complaint as not stating a cause of action, and specified the following grounds of demurrer:

1. After a litigation is completed between the parties to the record, a stranger cannot come in and tie up both parties by an injunction, or ask to have the judgment vacated. If the plaintiff in this action had any interest in the subject matter of the former suit, described in the complaint, it should have been made or should have become a party to it, by petition or otherwise; if it was not interested in the subject matter of that suit, it has no right to enjoin the judgment therein. And whether it was or was not interested in said suit, not having been made a party to it, its rights cannot be in any way affected by the judgment therein, and it has therefore no interest in vacating said judgment. 2. The plaintiff is not shown, by the complaint, to have any legal right, under its charter, to operate a railroad in New York or elsewhere, nor does said complaint show that the plaintiff has ever received from the state of Wisconsin any rights or franchises whatever; therefore the said deed of surrender is null and void, for want of any power on the part of said plaintiff to make or enter into the same. If the plaintiff can act as trustee in said mortgages, yet it could only enforce the mortgages by foreclosure and sale, according to the laws of Wisconsin, and could not enter into any contract by which it is to exercise franchises in the state of Wisconsin, never granted to it by said state. 3. The said deed of surrender is void upon its face, as against the creditors of said railroad company, in this, that it attempts to secure the property and revenue of said railroad company for [?] its creditors, and apply the same to the completion of its road. It is not permitted to a debtor in failing circumstances to derive any future benefit from such debtor's property until creditors are paid. 4. The mortgages did not convey to the

plaintiff, the railroad company's interest in the con-
tract with *Beane*, and the deed of surrender is no broader than
the mortgages. The mortgages conveyed only property and
not choses in action.

The demurrer was overruled; and *Fisher, Goodhue* and *Bush-
nell* appealed.

*Mat. H. Carpenter*, for appellants, urged the several objec-
tions to the sufficiency of the complaint, specified in the de-
murrer, and argued at length, 1. That a railroad company can-
not mortgage its property and franchises without permission of
the legislature. 2. That the Racine & Miss. R. R. Co. had no
authority from the legislature to make the mortgage executed
by it to the plaintiff on that portion of its road which is with-
in this state. 3. That the plaintiff was not authorized to re-
ceive such a mortgage. 4. That the deed of surrender is void.
5. That if the mortgage and deed of surrender are valid, still
the plaintiff had no right to the lands here in question, by the
terms of those instruments. Under the first point counsel said:
Sovereign powers can be delegated only by the sovereign; and
when delegated they are to be regarded as strictly a personal
trust, and can never be assigned. The legislative, judicial and
executive powers conferred by the people on the three branch-
es of government can never be conferred upon any other body,
or even referred back to the people themselves, except in cases
provided for in the constitution itself. *Barto v. Himrod*, 4
Seld., 483. The legislature has created this railroad corpora-
tion, and conferred upon it a portion of the sovereign power of
the state. Not a train of cars can run over its track but in
virtue of the state's right of eminent domain. This power,
and the other franchises, the legislature has conferred under
such conditions, restrictions and limitations as in its judgment
would prevent their abuse; and the charter of the company,
which is a contract between the state and the corporation cre-
ated by it, has imposed certain duties upon the corporation,
which it cannot discharge itself from; and it cannot sell or as-

sign its franchises, because if it could, it would no longer have it in its power to perform its part of the contract. When a corporation parts with all its property and franchises, it is dissolved. *Slee v. Bloom*, 19 Johns., 456; *Penniman v. Briggs*, Hopk., 300: Yet a corporation can only be dissolved by consent of the legislature. *Revere v. The Boston Copper Co.*, 15 Pick., 351; *Enfield Bridge Co. v. Conn. River Co.*, 7 Conn., 28; *Boston Glass Co. v. Langdon*, 24 Pick., 49; 2 Kent's Com., 311. From this it would follow that a corporation could not part with its property and franchises, without legislative license. But it has been repeatedly and directly adjudicated both. in England and in this country, that a corporation cannot in any way lease, sell, mortgage or assign its property and franchises, without authority of the legislature. *Beman v. Rufford*, 6 Eng. L. & E., 110; *Winch v. Birkenhead, etc.*, 13 id., 516; *The Great Northern, &c. v. The Eastern, &c.*, 41 Eng. Ch., 306; *East Anglian R. R. Co. v. Eastern Counties, &c.*, 7 Eng. L. & E., 505; *McGregor v. The Managers, &c.*, 16 id., 180; *The Great Northern R. Co. v. The Eastern Counties R. Co.*, 12 id., 224; *The King v. The Severn, &c.*, 2 B. & Ald., 646; *Reg. v. Eastern Counties, &c.*, 10 A. & E., 531; *Reg. v. South Wales, &c.*, 14 A. & E. (N. S.), 902; *Clark v. Washiugton*, 12 Wheat., 46, 54; *Winchester &c. v. Vimont*, 5 B. Mon., 1; *Arthur v. Com. Bank*, 9 S. & M., 394; *The People v. Bank of Hudson*, 6 Cow., 217; *Slee v. Bloom*, 19 Johns., 456. See especially *York & Md. R. R. Co. vs. Winans*, 17 How. (U. S.), 30, and *Pierce vs. Emery*, 32 N. H., 484, 507.

So strictly is it held that corporations cannot delegate, lease or assign, or in any manner transfer their powers, that it is held that two corporations cannot enter into a co-partnership to divide their profits. *Sharon Canal Co. v. Fulton Bank*, 7 Wend., 412; *Smith v. Smith*, 3 Dessaus. (S. C.)Ch., 557. And when the legislature authorizes. a corporation to lease its road, it is still held that the lessee is but the agent of the corporation, which is still liable for all the acts of its lessee, as it is

for the acts of its directors, conductors, engineers or other officers or agents.   *Nelson v. Vt. & Canada R. R. Co.*, 26 Vt., 717 ; *Sawyer v. the Rut. & Bur. R. R. Co.*, 27 id., 370 ; *York & M. R. R. Co. v. Winans*, 17 How. (U. S.), 30.   These authorities establish that the corporate powers, including the delegated sovereign power of eminent domain, are conferred in personal trust, and cannot therefore be assigned or transferred ; that the company cannot exonerate itself from performing its duty to the public ; nor can it incapacitate itself for so doing, by transferring its powers to other hands.   The mortgage in this case does not bind the mortgagee to perform any duty whatever to the public ; and makes no provision for the manner in which the powers transferred shall be exercised ; and it is manifest that if the mortgage is valid, the stockholders of the company cannot control the management of the road, as the legislature intended they should.   The security and safeguard which the legislature provided to prevent abuses, is completely lost.— Upon the 2d point counsel said : The company had no authority from the legislature to make this mortgage.   The only provision claimed to authorize it is in sec. 18 of the charter, Laws of 1852, p. 598: "The said railroad company are hereby authorized and fully empowered, in their corporate name and capacity, to borrow any sum or sums of money, and make and execute in their corporate name all necessary writings, notes, drafts, bonds, or other papers, and make, execute and deliver *such securities in amount and kind* as may be deemed expedient by said corporation, *any law on the subject of usury* in this state, or in any other state, to the contrary notwithstanding."   This provision clearly does not authorize a mortgage of the franchises of the road.   The right to give security will be construed to mean security upon the property, and not upon the corporate rights and franchises.   *Doe dem. Myatt v. St. Helen's R. R. Co.*, 2 Ad. and El. (N. S.), 364.—Upon the 5th point counsel said : The mortgages do not pretend to convey to the plaintiff, the railroad company's interest in the *Beane* contract, and the

subsequent deed only surrenders what the mortgages conveyed. They conveyed property, but *not the mere choses in action* of the railroad company. The plaintiff is, at most, but a mortgagee in possession *of the property described* in the mortgages. But it seeks, in this action, to acquire the interest of the railroad company in a contract between it and a stranger.

*J. A. Sleeper*, for respondent.

*By the Court*, DIXON, C. J. The mortgages and deed of surrender under which the plaintiff claims, have been several times under examination before this court. *Farmers' Loan & Trust Co. vs. Commercial Bank*, 11 Wis., 207; *The same vs. The same*, 15 Wis., 424; *The same vs. Cary*, 13 Wis., 110; *Dinsmore vs. The Racine & Mississippi R. R. Co.*, 12 Wis., 649. It follows, we think, from the reasoning of those cases, that the plaintiff acquired an interest in the lands in question by virtue of the mortgage upon the eastern division of the road, although the railroad company did not acquire its interest in the land under the contract with *Beane* until after the execution of that mortgage. The complaint avers that the contract was entered into with *Beane*, and the lands purchased by the railroad company, for the purpose of a depot, road-bed, side tracks, &c., at the village of Beloit; that the same are suitable and convenient for those purposes; and that the depot buildings and track, now in actual use, stand upon and run across the same. The lands having been purchased for and appropriated to these uses, the lien of the plaintiff's mortgage attached the moment the interest of the railroad company was acquired; and no subsequent alienation or transfer by the railroad company or its officers, without the assent of the plaintiff, could operate to displace or impair such lien. As a mortgagee in possession, therefore, and for the purpose of protecting the lien, the plaintiff has such an interest as will enable it, upon payment or tender of the residue of the purchase money, to compel the execution of a comveyance to the railroad company; and a

consideration of the effect of the deed of surrender becomes unnecessary. Such is the object of the present action. The plaintiff asks, upon payment of the balance of the purchase money due to *Beane* under the contract, that the deed from him to the railroad company, deposited with *Washburn*, may be delivered and recorded. This would secure the title of the railroad company, and thus protect the lien of the mortgage to the plaintiff.

As a measure of auxiliary relief, and to prevent confusion in the title of record, it is proper enough that the plaintiff should ask that the execution of the deed from *Beane* to *Bushnell* should be restrained. The plaintiff, being a stranger to the action of *Beane* against the *Railroad Company, Bushnell, Washburn and others*, is, of course, not bound by that judgment. This has been already decided. *Beane vs. Fisher et al.*, 14 Wis., 57. If the deed from *Beane* to *Bushnell* had been executed, the proper relief would have been to compel a conveyance from *Bushnell* to the railroad company.

Whether the plaintiff was authorized, under its charter and the several amendments, to receive the mortgage, cannot be made a question upon this demurrer. The charter, with the several amendatory acts, are pleaded by their titles, and it is likewise averred that the plaintiff was "duly authorized to receive the trusts in the complaint mentioned." This is good pleading under the statute, a recital of the acts of incorporation, or of those parts of them under which the specific powers are claimed, being unnecessary. R. S., chap. 148, secs. 4, 11. *The Connecticut Mutual Insurance Co. vs. Cross*, unreported. The demurrer admits that the plaintiff was authorized as alleged in the complaint.

Order affirmed.

[NOTE.—The above case was decided at the June term, 1862, but the opinion was not filed in time to appear with the decisions of that term.—REP.]