CHYNOWETH *vs.* TENNEY et al.

APPEAL FROM CIRCUIT COURT, DANE COUNTY.

Heard August 19, 1859.]                          [Decided January 4, 1860.

### *Chattel Mortgage—Instruction.*

A chattel mortgage containing these words : "All my stock of harnesses, whips, saddles, and other merchandize, now on hand, manufactured, *or such as shall be manufactured, or bought and contained in the shop or store occupied by me,*" &c., and containing a power of entry, and seizure on default, gives the mortgagee a revocable license to enter on the premises, and take the after acquired property ;

Chynoweth vs. Tenney et al.

and if unrevoked, it justifies him to enter and take possession, according to the terms of the license, and the title is good as being taken with the assent of the grantor, but if before the license is executed, it is revoked; then it becomes inoperative and void. The instrument is not a transfer, but it may operate as a license to take the property.

On the trial of an action of replevin, the defendant claimed the right to take the goods, by virtue of a chattel mortgage, made by the plaintiff to the defendant, which specified all the stock, &c., on hand, and also " such as shall be manufactured, or bought and contained in the shop," the plaintiff asked the court to instruct the jury, that if they found the property in question was manufactured after the execution of the mortgage, and from materials purchased after its execution, in that case the mortgage, as to those articles, was inoperative, and would not justify the defendant in taking them, against .the plaintiff's will; *held*, that this was a proper instruction.

The maxim " that a man cannot grant or charge that which he hath not," considered and enforced; and it makes no difference whether the controversy be between the parties tò the grant, or otherwise.

A chattel mortgage of after acquired property is not effectual to create a lien in equity in the mortgagee, upon the property.

A chattel mortgage of after acquired property cannot be sustained as an executory contract, conferring an authority upon the grantee to enter, take and hold the property, against the will of the grantor.

This action was brought by Thomas Chynoweth against D. K. Tenney, Wm. M. Pyncheon, and Joseph Reese, to recover a quantity of harness, &c. The complaint was in the usual form under the code, in an action to recover property wrongfully taken, &c. The answer was a general denial; also a special answer, justifying under a chattel mortgage, made to R. H. Hartly & Co., to secure the payment of a promissory note, for $500, under which they claimed to act, as the agents of Hartly & Co. The other facts in the case can be readily gathered from the opinion of the court. Judgment was rendered for the defendants, from which the plaintiff appealed.

*J. C. Hopkins,* for the appellant.

*Carpenter and Sprague,* for the respondent.

*By the Court,* PAINE, J. The decision of this case depends upon the effect to be given to a chattel mortgage, given by the appellant, which describes the property in these words: "All my stock of harnesses, whips, saddles, and other mer-

chandize, now on hand manufactured, *or such as shall be manufactured, or bought and contained in the shop or store occupied by me,"* &c. It contained also a power of entry and seizure on default, &c.

The defendants, as agents of the mortgagees, took possession, subsequently, of the property in the shop, which, however, the proof showed to have been bought by the mortgagor, and placed there after the execution of the mortgage. The appellant then replevied it. The material question in the case fairly arises on the first instruction asked by his counsel, which the court refused to give. It was this: if the jury "found the property in question was manufactured after the execution of the mortgage to Hartley\& Co., and from materials also purchased after its execution, that in that case the said mortgage as to those articles was inoperative and void, and would not justify the defendants in taking said property from the plaintiff, against his will."

The effect to be given to conveyances which purport to grant property to be there after acquired by the grantor, has of late occupied the attention of courts to a considerable extent, and does not seem to be entirely settled. The maxim of the Common law, that "a man cannot grant or charge that which he hath not," if applied to it without qualification, would readily determine it. But the counsel for the respondents have assailed this maxim, and have contended with great force, that it ought not to be applied in this case. The position taken is, that while the authorities establish that as between the grantee and creditors of the grantor, or subsequent purchasers from him, the conveyance does not pass such after acquired property, yet that they do not establish it as between the parties to the conveyance, and that as between them it should be held operative. In support of this position, the various authorities on the subject are commented on, with much force and discrimination, in the printed argument of

the respondents, and we have examined their position with
that attention which the importance of the question demands.
It appears, undoubtedly, that the question, in most of the
cases, has arisen between the grantee and subsequent pur-
chasers or creditors of the grantor. But this was not so in
all. And even in those where such was the case, while the
courts have sometimes alluded to the use that might be made
of such conveyances, if sustained, to defraud creditors, yet in
no one which has fallen under our observation, has the de-
cision assumed that the question should be decided different-
ly, in favor of creditors, from what it should be when occur-
ring between the parties. On the contrary, the grounds upon
which those decisions are based, seem to preclude this idea.
They are not based upon the ground of fraud. If they were,
that would be a sufficient ground in itself, and would have
relieved the courts from the necessity of inquiring further
into the legal effect of such conveyances to pass the property.
They were based upon the ground, that according to the
maxim alluded to, the conveyance was not operative to pass
the property. The creditor or subsequent purchaser held it,
not because fraud made it void as against him, but because
as between the parties to the conveyance, it had, and could
have, no effect to transfer the property. When those decis-
ions, therefore, in favor of the creditor, are placed upon the
very ground that it was impossible in law for the grantor to
convey the property, and so he did not convey it, they would
seem to leave no room to say, even when the question oc-
curred between the parties, that it *was* possible to convey it,
and it was conveyed. If this can be said as between the
parties, then some other reason must be given for the decis-
ions in the case of' creditors. It must be said, not that the
grantor could not convey, but that the conveyance was void
as against them. For it seems clear that when the question
turns upon the possibility of such a conveyance being effec-

tual to transfer after acquired property, it cannot be said in one case to be possible, and in another impossible. For the possibility of it relates, in both cases, to its effect between the parties. And the maxim alluded to, upon which all the opinions rest, evidently relates entirely to the effect of the conveyance between the parties, without being founded upon any considerations growing out of the rights of third persons. We think, therefore, after carefully examining the authorities cited, that the question as to the effect of such a conveyance, so far as actually transferring after acquired property is concerned, must be decided in the same way, whether it arise between the parties to the instrument or otherwise.

The case of *Lunn vs. Thornton*, 50 E. C. L., 379, was a case where the question arose between the parties, and the grantor was allowed to sustain an action of trover against the grantee, for taking after acquired property, attempted to have been conveyed by a bill of sale. The plea presented the precise question whether a conveyance could transfer property to be thereafter acquired by the grantor; and the court laid down the rule, which seems fully sustained by all the authorities, some of which will be hereafter referred to upon another point, that such a conveyance was inoperative to transfer the property, without some new act on the part of the grantor ratifying it, after he had acquired it. See, also, *Head vs. Goodwin*, 37 Maine, 182.

But it is insisted that the plaintiff is estopped from denying the right of the mortgagees. That it is analagous to the case where one sells a specific article of personal property without title, and afterwards acquires title; or where one sells real estate and and warrants the title, having no title at the time, but afterwards acquires it. In each of these cases the grantor is estopped from setting up his after acquired title against his previous grant. And it is said this case comes within the same principle. At first sight, this seems plausible, and it re-

quires an effort of the mind to distinguish the cases, but we think they are fairly distinguishable. An estoppel prohibits one from setting up the truth against some act or statement of his own, upon which another has acted in such manner that he will be injured if the truth is afterwards allowed to be shown. It may be supported, therefore, in the cases above supposed, upon two grounds. In the first place, the party who sells a specific article of personal property, then in existence and expressly designated, or a piece of real estate, asserts that he then has an existing title, and the vendee purchasing relying on this assertion. He has a right to rely on it. If it is untrue in fact, he is not bound to know it. And it would clearly be contrary to every principle of justice to allow the vendor to set up an after acquired title against his conveyance. But this reason does not exist in case of a conveyance of the kind in question. There it appears on the face of it that the grantor has no title. And the grantee is bound to know that, in law, the conveyance is inoperative. This ground of estoppel, therefore, fails. The other ground is derived from the implied warranty of title in the sale of personal property, and the express one in the sale of real estate. There, the party being bound to support and defend the title, cannot be permitted himself to overthrow it against his own duty and obligation. And in each instance, the property being then in existence and expressly designated, the agreement to warrant the title has a subject to which it relates, so that the agreement is operative, though the grantor has no title. Thus, if I undertake to sell a particular horse, even though I had no title, yet the implied warranty would relate to that horse, and would not fail for want of a subject to which it applied. But here the case is different. A covenant to warrant the title, so far as after acquired property is concerned, is inoperative for want of a subject. The property is not in existence. The covenant, when made, relates to no specific prop-

erty, and never becomes operative because, on the face of the
conveyance, it appears that the transfer is totally void for
want of a subject matter. We think, therefore, that the doc-
trine of estoppel does not apply to such a case. And this
view is fully sustained by the case of *Crawford vs. Lock-
wood*, 9 How. Pr. R., 547, in which the opinion is delivered
by Justice Selden. And the fact that in *Lunn vs. Thornton*,
and the other cases, where the effect of a conveyance of this
kind has been fully discussed, no suggestion seems to have
been made that the doctrine of estoppel was applicable, is
also entitled to much weight upon this point.

But it is contended further that, although this instrument
may be inoperative at law, yet that it was effectual to establish
an equitable lien. And the decision of Judge Story in *Mitchel
vs. Winslow, et al.*, 2 Story, 630, and the authorities by him
cited, are relied on to support this position. But we think the
doctrine of this case had been so fully denied by subsequent
cases, that it cannot be considered as law. *Moody vs. Wright*,
13 Met., 31 ; *Mogg vs. Baker*, 3 Mees. and Wels., 195 ; *Gale
vs. Barnwell*, 7, Ad. and El. N. R., 850. And in *Congreve
vs. Evetts*, 10 Ex. R., 307, Parke, B. says that such a convey-
ance " gave no legal title, *nor even equitable title*, to any spe-
cific goods." Other cases, to the same effect, might be cited,
but we deem it unnecessary.

And this brings us to the last and most doubtful question
to be determined. That is, whether, conceding the instru-
ment not valid as a transfer, it can be sustained as an execu-
tory contract, conferring an authority upon the grantee to
enter and take such after acquired property, and hold it
against the will of the grantor? We have not found any
case where the facts made it necessary to decide this precise
question. But there are cases which contain *dicta* and inti-
mations that would certainly support the position. The case
of *Moody vs. Wright*, 13 Met. 31, before cited, states the doc-

trine as follows: "a stipulation that future acquired property shall be holden as security for some present engagement, is an executory agreement of such a character, that the creditor with whom it is made, may, under it, take the property into his possession, when it comes into existence and is the subject of transfer by his debtor, and hold it for his security; and whenever he does so take it into his posession, before any attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same; but until such act done by him, he has no title to the same; and that such act being done, and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge. The executory agreement of the owner in such case, is a continuing agreement, so that when the creditor does take possession under it, he acts lawfully under the agreement of one then having the disposing power, and this makes the lien good." This would seem to cover almost the exact ground, but we still think it does not necessarily, and if it did, there was nothing in the case that presented the question how far such an agreement conferred an authority on the grantee that could be enforced by him against the subsequent dissent of the grantor. No possession had ever been taken or attempted by the grantee, and the case was decided upon that ground. The question, therefore, of the extent of his right to take possession as against the grantor, was not really in the case. And when the language of the court is closely examined, we think it does not contemplate the question whether the grantor might revoke the authority before possession taken, but only asserts, assuming no such revocation, that the agreement would be a sufficient authority for the grantee to take possession. And this, we think, may well be admitted, without touching the question of the right of revocation in the grantor.

The question arose, in the case of *Chapman vs. Weimer et al.*, 4 Ohio St. Rep., 481. In that case the mortgagor had, after acquiring the property, delivered it to the mortgagee, and the decision was placed on that ground. And the court, having quoted the above extract from *Moody vs. Wright*, say that the "Judge clearly expresses the opinion" that the agreement would authorize the mortgagee to take possession, "without having the property actually delivered to him by the mortgagor." But they carefully guard against committing themselves to that doctrine by saying that, in the case before them, "it is not necessary to carry it to that extent." And that extent was, as before stated, only that under the mortgage, the grantee might take possession without any further authority from the grantor, without touching the question whether the grantor might revoke or annul that authority.

The question, though not exactly involved, has been recently commented on in several cases in the English courts, and while the exact points adjudicated do not seem to sanction the right of the grantee under consideration, yet there are such strong intimations in its favor, as to leave it in a state of great uncertainty. In *Lunn vs. Thornton*, while the pleadings presented the precise question whether the instrument could operate as a transfer, which the court decided in the negative, they yet take pains to say that they decide that question only, and throw out the following intimation: "It is not a question whether a deed might not have been so framed as to have given the defendant *a power of seizing* the future personal goods of the plaintiff, as they should be acquired by him and brought on the premises, in satisfaction of the debt." This has been strongly relied on in subsequent cases, as indicating that the court thought such a power might be given; and it is so urged by the respondent's counsel. But it is, undoubtedly, a very unsafe rule, to place

reliance on intimations of this character. Courts common-
ly have enough to do to decide what is absolutely necessary
for them to decide, and where the case permits it, they fre-
quently assume, for the sake of the argument, and to clear
it of other questions, propositions which they by no means
decide. This very case of *Lunn vs. Thornton*, taken in con-
nection with the previous case of *Tapfield vs. Hillman*, 64 E.
C. L., 243, furnishes a striking illustration of this fact. In
the latter case the question was whether an assignment of
property on certain premises justified the seizure of property
afterward acquired and placed thereon. The court, in con-
struing the instrument, held that it did not include such after
acquired property. But they clearly assume that if it had,
such property could have passed under it. But when the
very question was presented in *Lunn vs. Thornton*, they had
to decide that such property could not be transferred by such
an instrument. It would be very unsafe, therefore, to hold
that the intimation in *Lunn vs. Thornton*, as to the possibil-
ity of so framing a deed as to confer such a power of seizure,
furnishes any real support for the doctrine, that it can be so
framed as to give the grantee authority to enforce it against
a revocation by the grantor. And a similar view of the
danger of relying on such intimations is supported by the
comments of the court in the case of *Hamilton & Robinson
vs. Rogers*, 8 Maryland, 301, which is a decisive case against
the validity of such instruments as transfers.

In *Congreve vs. Evetts*, 10 Exch. Rep., 298, the grantee
took possession without any other license or consent on the
part of the grantor, beyond that contained in the deed; and
the court held that the possession so taken was under the au-
thority of the grantor, and vested the title in the grantee.
But the question did not arise between the grantor and
grantee, and there was nothing in the case that raised the
question what would have been the effect of a dissent by th

grantor, or a revocation before possession taken. It is only an authority, therefore, to the extent that the instrument justifies taking possession in the absence of any question as to revocation by the grantor.

The case of *Hope vs. Hayley,* 85 E. C. L., Rep., 829, is also relied on. There are intimations in it supporting the right claimed, but we think its actual authority is the other way. In that case the grantee had taken possession with the consent of the grantor. Lord Campbell, after very properly holding that an ineffectual attempt in the instrument to transfer the property, ought not to prevent it from having any effect as a license, that it might otherwise have, proceeds to say : " The defendants having taken possession with Routledge's acquiescence, he must be considered to have consented to their having the property. It could not, indeed, be granted when not yet in the possession of the grantor, but the defendants take actual possession, *and he assents to that. There is a subsequent act, abundantly sufficient to satisfy Lord Bacon's rule.*" Thus placing his opinion on the subsequent act of the grantor, which is sufficient within all the authorities. Coleridge, J., goes somewhat further in his intimation, but falls back on the same rule, by saying that if he was wrong in his other view, " there was a sufficient intervening act."

In this state of the authorities, the precise question which we have to pass on, seems to be undetermined. And though the conclusion to which we have arrived has not been reached without considerable doubt, yet we think it reasonably results from the principles established by the cases referred to. That conclusion is, that an authority like the one in question, is a revocable license; that if unrevoked, it justifies the grantor in taking possession according to its terms, and that when he has so taken possession, he has done it with the consent of the grantor, and his title becomes good; but be-

fore it is executed, the grantor may revoke it, by forbidding the grantee to take possession, and that then it becomes wholly inoperative and void. We have arrived at this conclusion by the following process: . 1. The various cases establish beyond question, the proposition that such an instrument cannot operate as a transfer. They also establish that it may operate as a license. And by applying to these two propositions the law fixing the nature and character of a license, the conclusion follows, that it is revocable. The law last referred to is very clearly stated in *Wood vs. Leadbitter*, 13 Mees. & W., 843–4. It was a case where the proprietor of race grounds had sold tickets for a guinea each, which it was understood would admit the holder to the grounds during certain races. The plaintiff had purchased such a ticket, and entered upon the grounds, but before the races were over, was, after being requested to depart, put off the grounds without unnecessary violence, by the order of the proprietor, without refunding the guinea. The question involved was the right so to put him off. The court held that the right to remain upon the land during the races, was such a right as could only be granted by deed, and that therefore the plaintiff had a mere license. And then the law, in regard to the effect of such a license is so clearly stated, and seems to us so applicable to the precise question here, that we cannot forbear quoting at some length from the opinion, the first part being itself a quotation from the opinion of Lord. C. J. Vaughn, in *Thomas vs. Sorrel*: "In the course of his judgment the Chief Justice says; (Vaughn, 351); 'A dispensation or license properly passeth no interest, nor alters or transfers property in any thing, but only makes an action lawful, which without it had been unlawful. As a license to go beyond the seas, to hunt in a man's park, to come into his house, are only actions which, without license, had been unlawful. But a license to hunt in a man's park, and carry away the deer

killed to his own use; to cut down a tree in a man's ground, and to carry it away the next day after to his own use, are licenses as to the acts of hunting and cutting down the tree, but as to the carrying away of the deer killed, and the tree cut down, they are grants. So, to license a man to eat my meat, or to fire the wood in my chimney to warm him by, as to the actions of eating, firing my wood and warming him, they are licenses; but it is consequent necessarily to those actions that my property be destroyed in the meat eaten, and in the wood burnt. So in some cases by consequent and not directly, and as its effect, a dispensation or license may destroy and alter property.'

" Now, attending to this passage, in conjunction with the title, LICENSE, in Brooks' Abridgment, from which, and particularly from paragraph 15, it appears that a license *is in its nature revocable,* we have before us the whole principle of the law on this subject. A mere license is revocable; but that which is called a license is often something more than a license,—it often comprises or is connected with a grant, and then the party who has given it, cannot, in general, revoke it, so as to defeat his grant to which it was incident."

" It may further be observed that a license under seal, provided it be a mere license, is as revocable as a license by parol; and on the other hand, a license by parol, coupled with a grant, is as irrevocable as a license by deed, provided only that the grant is of a nature capable of being made by parol. But where there is a license by parol, coupled with a parol grant, or pretended grant of something which is incapapable of being granted otherwise than by deed, there the license is a mere license; it is not incident to a *valid* grant, and it is therefore revocable. Thus, a license by A. to hunt in his park, whether given by deed or parol, is revocable; it merely renders the act of hunting lawful, which, without the license, would have been unlawful. If the license, be as put

by Chief Justice *Vaughn*, a license not only *to* hunt, but also to take away the deer when killed to his own use, this is in truth a grant of the deer, with a license annexed to com, on the land, and supposing the grant of the deer to be good, then the license would be irrevocable by the party who had given it ; he would be estopped from defeating his own grant, or act in the nature of a grant. But suppose the case of a parol license to come on my land and there make a water course to flow on the land of the licensee; in such a case there is no valid grant of the water course, and the license remains a mere license, and therefore capable of being revoked. On the other hand, if such a license were granted by deed, then the question would be on the construction of the deed, whether it amounted. to a grant of the water course; and if it did, then the license would be irrevocable."

This doctrine seems to us fully to support the conclusion above stated. The instrument in question was inoperative as a transfer; it did create a license, and the license being un-coupled with any interest whatever, and, in the language of the case just cited, not being " incident to a valid grant," was revocable. We have sought in vain for any principle or rule of law which can, consistently with other established princi-ples, furnish any solid foundation upon which to rest the right of the grantee, in such a case, to enforce the mere license against the subsequent dissent of the grantor. We could not rest it upon the instrument, without giving it, in itself, some effect as a transfer, which is repugnant to the established position that it cannot have such effect. It being, therefore, only a license, expresssly called so by the Judge in *Hope vs. Hayley,* though its authority may continue, if unre-voked, and if possession is actually taken under it, it would be evidence of a continuing assent on the part of the grantor to such taking, and equivalent to a delivery by him, so that it would then give effect to the transfer; yet before that,

being a mere license, it is revocable, and if revoked, is at an end.

It may be said that this seems inequitable, and is not carrying out the intention of the parties. But this may be said of many other cases, where, by the established rules of law, no effect could be given to such intentions, as where they attempt to make contracts, void within the statute of frauds. In the case last cited, it certainly seems inequitable, and contrary to the intention of the parties, that the plaintiff, after paying his guinea to see the races, could be put off by the one who had taken his money, without its being refunded. But such was the legal result of the manner in which their intentions were evidenced. The answer to all such objections, is that courts can only so far carry out the intentions of parties, as they are according to the established rules of law, evidenced in such manner as to make them binding and effectual.

We think, therefore, that the instruction asked by the appellant's counsel, which implies a dissent to the taking by the grantor, should have been given. The judgment is reversed, with costs, and the cause remanded for a new trial.