### SINGLE vs. PHELPS and others.

*Chattel mortgage on subsequently acquired property.*

Under our statute (sec. 9, ch. 107, R. S.), an instrument purporting to be a mortgage of personal property to be acquired after the same was executed and filed in the town clerk's office (such property not being delivered to and retained by the mortgagor), is not valid against one who has purchased the property from the mortgagor; but, although the instrument was so ratified after the acquisition and before the sale of the property by the mortgagor, as to make it binding between the parties thereto, and although the purchaser had previous actual notice of the mortgagee's claim of title, yet, in the absence of any actually fraudulent intent, he may hold the property as against the mortgagee.

APPEAL from the Circuit Court for *Sauk* County.

On the 26th of November, 1857, Pearley Dodge and Garry L. Judson executed to the plaintiff a chattel mortgage to se-

cure the payment by them to him of $11,000 on or before July 1st, 1859. The property mortgaged is described as "all the pine logs that are now lying in the stream and on the bank of the stream called Little Rib, and also all our right, title, interest, claim or demand, of, in or to, or that we may acquire in, all pine saw logs to be put into the stream or on the bank of the stream called Little Rib, this coming logging season of 1857 and 1858, by the said Pearley Dodge and Garry L. Judson, or by any other party agreeing to put in logs for them."

In March, 1858, (according to the testimony of plaintiff's witnesses), Dodge and *Single* went to various places on the Little Rib river, where Dodge & Judson had logs cut after the execution of said mortgage, and the former pointed out the same to *Single*, and said, "There are the logs I wish to deliver on the mortgage." In September of that year Dodge & Judson turned over to *Phelps*, on a debt due him, 500,000 feet of lumber made from these logs; and afterwards *Phelps* was informed that *Single* claimed the lumber, and had refused to release it when requested by Dodge & Judson to do so. In the spring of 1859, *Phelps* commenced to run the 500,000 feet of lumber to St. Louis; but while upon the Wisconsin river it was seized by the sheriff by direction of the plaintiff in this action. *Phelps* thereupon delivered to the sheriff a replevin bond executed by the other defendants, and held possession of the lumber.

The court instructed the jury, among other things, as follows: "If Dodge & Judson, after the execution of the mortgage, cut down and purchased other logs, and put them upon the bank of or in the stream mentioned in the mortgage, as they intended to do at the time of the execution and delivery of the mortgage, and if, after they had so put them in the stream, they delivered them to the plaintiff for the purpose of having them covered by the mortgage, as they had by the mortgage attempted and intended to do, said logs, by such delivery, would be bound by the mortgage as effectually as to persons deriving claims to the logs after such delivery, as if they had

been owned by the mortgagors at the time of the execution and delivery of the mortgage."

Verdict, that the plaintiff was owner of the property and entitled to its possession, and assessing its value. A motion for a new trial on the ground of erroneous instructions, and for other reasons, was denied, and judgment rendered against all the defendants ; from which they appealed.

*Geo. B. Smith* and *S. U. Pinney*, for appellants, to the point that the logs out of which the lumber in question was manufactured, were not covered by the mortgage, cited *Chynoweth v. Tenney*, 10 Wis., 397 ; *Comstock v. Scales*, 7 id., 159.

*J. C. Hopkins*, with whom were *Spooner & Lamb*, of counsel, contra, cited 10 Met., 493 ; *Lunn v. Thornton*, 50 E. C. L., 379 ; 13 Met., 32 ; 85 E. C. L., 829 ; 37 Me., 137 ; 7 Cow., 95 ; 2 Bouv., 133 ; 9 Barb., 449 ; 3 Wis., 221 ; sec. 9, ch. 76, R. S. 1849.


DIXON, C. J. Section 9, chap. 76, R. S. 1849, now found as section 9, chap. 107, R. S. 1858, provides that "no mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage (or a copy thereof) be filed in the office of the town clerk where the mortgagor resides." The question in this case, and the only one we shall consider, is as to the effect of this provision upon a mortgage of personal property acquired after the mortgage was executed and filed, the property having remained in the possession of the mortgagors until it was sold and delivered by them to a third person, against whom the mortgagee brings suit to assert his title and right of possession under the mortgage. In considering this question, we shall assume that the new act required by law to make the mortgage effectual as between the mortgagors and mortgagee, was performed by the mortgagors before the sale, and that the purchaser bought with actual notice of the

claim of title asserted by the mortgagee.     The supreme court of Massachusetts, speaking of the same question under a statute identical with our own, use the following language : "Now it is clear, we think, that the record of the mortgage deed is no sufficient notice of a legal incumbrance as to subsequently acquired property; because, by law, no such property could be sold or conveyed thereby ; and it would furnish no notice that any property would be afterward purchased, or, if purchased, that any act would be done to ratify the grant in that respect. As to such property, therefore, the mortgage could not be valid, except as between the parties thereto, unless such goods were delivered by the mortgagor to the mortgagee, with the intention to ratify the mortgage, and the mortgagee retained open possession of the same until the time of the attachment." *Jones v. Richardson*, 10 Met., 493.   We are of opinion that this is a correct statement of the law, and that, in the absence of any actual fraudulent intent on his part, the purchaser from the mortgagor in possession is entitled to hold the property as against the mortgagee, he not having taken and retained the possession.     This conclusion seems to result inevitably from the plain language of the statute, that *no such mortgage shall be valid as against any other person than the parties thereto*, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be filed in the office of the town clerk.    It is a direct legislative declaration that every such mortgage shall have no effect as against a person not a party to it, unless one or the other of these things be done.    It is the same as if the legislature had declared that it should be void as to all third persons.    Possession of the property not having been taken and retained by the mortgagee, his right to it, as between him and a third person who has fairly purchased and paid for it and received possession from the mortgagor, depends entirely upon the mortgage having been filed in the town clerk's office.    If there is no mortgage on file, then, by the imperative operation of the statute,

the title of the purchaser must prevail.    Now, it is conceded that property not in existence is incapable of legal transfer, and that an instrument purporting to transfer it by way of mortgage, conveys nothing.    What then has the mortgagee upon file in the clerks office ?    Clearly not a mortgage, but an instrument inoperative and void as such by its very terms.    He has then no mortgage on file, and both the conditions upon upon which his rights depend, by statute, as against the purchaser, are wholly wanting.    The transaction may have been ratified by the mortgagors, after they acquired the property and before the sale, so as to make the transfer good as against them ; but that does not change the terms of the instrument on file, or transform it into a valid mortgage on its face.    It speaks the same language still, and informs the purchaser, not that the intended mortgagee has a lien or interest, but that he has none. It is by its terms no more a mortgage after the act of ratification by the mortgagors than it was before.    It is impossible for us to conceive how the placing of such an instrument upon the files can, in any case, be regarded as a compliance with the requirement of the statute.    It clearly cannot be ; for when the legislature speak of a mortgage or a copy, they mean an instrument which of its own force operates as a conveyance of the property—certainly not one which can have no such effect. The object of the statute was to enable purchasers and creditors to obtain full information as to the true state of the title of the party in possession.    This was deemed necessary for the protection of purchasers and creditors, and it was never intended that they should look elsewhere than to the mortgages on file to obtain such information.    There being then no mortgage on file, the mortgagee out of possesion is absolutely debarred by the very words of the statute.    And knowledge in the purchaser, of the existence of a mortgage which has not been duly filed, will not preclude him from availing himself of the objection.    The statute makes no exception, and the court cannot, without destroying the protection intended to be afforded by it.

*Farmers' Loan & Trust Co. v. Hendrickson,* 25 Barb., 484; *Ely v. Carnley,* 3 E. D. Smith, 489, and the same case affirmed in 19 N. Y., 496. As already suggested, the only ground upon which the mortgagee in such case can maintain his title or assert any right to the property as against the purchaser, is that the sale was merely colorable, or made for the purpose of defrauding him.

The court below having given some and refused other instructions to the jury contrary to the principles stated in this opinion, the judgment must be reversed, and the cause remanded for a new trial according to law.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.