Merchants' & Mechanics' Savings Bank vs. Lovejoy.

<table>
<tr><td>84</td><td>601</td></tr>
<tr><td>90</td><td>324</td></tr>
<tr><td>84</td><td>601</td></tr>
<tr><td>102</td><td>554</td></tr>
<tr><td>104</td><td>659</td></tr>
</table>

MERCHANTS' & MECHANICS' SAVINGS BANK, Appellant, vs. LOVEJOY, imp., Respondent.

*March 22 — April 11, 1893.*

*Mortgage of land and of crops to be raised thereon: Deed absolute in form: Debtor and creditor: Fraudulent conveyances.*

R. conveyed land to L. for a nominal consideration, by deed absolute in form, but in fact to secure a pre-existing debt from R. to L. At the same time they executed an agreement by which L. was to sell the land to R. again for the amount of said debt in semi-annual payments of $50 each, with interest. R. was to pay all taxes, keep the buildings insured, etc., and it was stipulated that the possession of the premises should be in L. until $1,000 of the principal should be paid; that until that time all crops raised on the premises, except such portion thereof as should be necessary to feed the stock of R. and such as he should use for food in his family, should belong to L., but he should apply the proceeds of the sale thereof upon the principal and interest aforesaid; that R. should farm the land for L. and store all crops raised thereon for him; and that in case of default in making any payment R. should forthwith deliver

up the premises to L. This agreement was never recorded or filed. R. continued in actual possession of the premises and of the crops raised thereon from time to time. *Held:*

(1) The deed and agreement together constituted a mortgage of the land to L., and an attempted mortgage or pledge of the crops thereafter to be raised thereon until the $1,000 should be paid.

(2) Such attempted mortgage of the crop was void under sec. 2313, R. S., as against other creditors of R., whether prior or subsequent to its date or to the time when the crop was raised, because there was no delivery of the possession of the crops to the mortgagee, and no act equivalent thereto.

(3) Such attempted mortgage of the crops was also void as against other creditors of the mortgagor, because it reserved to him a right to a portion of every crop to be raised, under an arrangement which was to continue at least ten years. The arrangement therefore necessarily tended to hinder, delay, and defraud creditors.

CASSODAY, J., is of the opinion that a valid stipulation may be inserted in a real-estate mortgage, whereby the mortgagee may be deemed to be in possession and the mortgagor, as his agent, continue to occupy, cultivate, and dispose of the crops, and, after paying the expenses of doing so, apply the net proceeds in payment of the mortgage debt. But he concurs in holding the mortgage in this case invalid as to the crops, because of the reservation of a portion thereof to the mortgagor without regard to the expenses of raising such crops.

APPEAL from the Circuit Court for *Rock* County.

The appellant commenced an action against the defendant Robinson to recover the amount of three promissory notes, and at the same time summoned the defendant Holdredge, as garnishee of Robinson, to reach the proceeds of the sale of some tobacco from Robinson to Holdredge. The answer of the garnishee disclosed that the sum of $247.60 was due from him to Robinson for the tobacco, or whoever owned it; that he had been notified by *S. S. Lovejoy* that he claimed to own Robinson's interest in the tobacco under some contract or agreement; that he was ready and willing to pay the amount to whoever might be entitled to it, and he desired that question should be determined by the court.

Under proper orders, the garnishee paid the money into court, and *Lovejoy* was made a party defendant in respect to his claim, and he appeared and litigated his right to the money with the plaintiff, when it appeared that the farm upon which the tobacco was raised had been conveyed November 7, 1887, by Robinson and wife, to the defendant *S. S. Lovejoy*, for the nominal sum of one dollar, subject to three mortgages thereon, one of which was to the said *Lovejoy* and A. P. Lovejoy, and on the same date a certain agreement was executed between the defendant *Lovejoy* and the defendant Robinson, by which it is stated that the former, in consideration of the payment of the money and the performance of the covenants therein specified as conditions precedent, agreed to sell to the latter the same lands for $3,685, in semi-annual payments of $50 each, with interest at eight per cent., payable annually. This agreement contained covenants by Robinson to pay all taxes thereafter assessed on the premises, and in case of foreclosure all the taxable costs and expenses thereof, and to keep the buildings on the premises insured for not less than $1,800,— policies to be made payable or assigned to *Lovejoy* as his interest might appear; and it was agreed "that the possession of all and singular the said premises agreed to be conveyed shall be and remain in said party of the first part [*Lovejoy*] *until the sum of $1,000* of the aforementioned principal sum of $3,685 shall be paid, together with all interest then due upon said principal sum, *and until such time all crops* raised upon said premises, or any part thereof, *except such portion thereof* as may be necessary to feed the stock on said premises belonging to the said party of the second part [said Robinson], and such as he *may use for food in his family*, which is to be apportioned and set apart by the parties acting mutually when each crop, respectively, is in readiness therefor, *shall belong to, and be the sole property* of, the party of the first part; but

said party of the first part is *to apply the net proceeds aris-ing from the sale thereof in part payment* of said principal and interest payable to him as aforesaid, applying the same first to the payment of interest, and any excess of such proceeds above what shall be necessary to pay interest to be applied upon the principal; and said party of the second part agrees to farm said land in a husband-like manner for the party of the first part, and store all crops raised thereon for the party of the first part, on said premises, in due season." It was further agreed that upon faithful perform-ance by the party of the second part of his undertaking, and payment of principal, interest, and taxes, the party of the first part should and would execute to him a good and sufficient deed of said premises; that the payment of said purchase money when due was a material part of the agree-ment, and in case of any default therein the agreement was to be void and all payments made thereon forfeited, and in case of any default in making payments of the principal sum, interest, or taxes, the party of the second part should forthwith deliver up the premises to the party of the first part.

It was proved by Robinson that he had lived on the farm fifteen years, and ever since he moved on it, and lived there when he deeded it to *Lovejoy,* and had worked the land under the contract, and raised the tobacco under it, and signed the contracts for its sale, and acted for him, with his sanction, in doing so. *Lovejoy* testified that Robinson had paid him nothing on the contract, aside from what he had received from the crops; that he had not received as much as $200 to apply on the principal; that he had a running account with Robinson, for things he had let him have, to come out of what he might pay, and he did not think the interest was hardly paid up to January 16, 1891, and that there had been no settlement between them since the making of the contract; that he had never personally

sold anything raised on the farm; that the first object in taking the contract was to get their pay. Robinson did all the work, and furnished all the seed and tools. Being asked why the clause was put in the contract in relation to the title to the crops remaining in him, he answered, "So they would be mine, and so nobody could touch them but me." Question: "Did you do it to secure you for the payment of this $1,000 principal?" Answer: "Perhaps it was security. I don't know. It was so that no one else could take hold of them, if he had any other debts. They might think they were his crops, and make some costs without reason. I allowed him to take, out of the crops he raised, a sufficient amount to feed his stock he had on the premises, and a sufficient amount each year to take care of his family and to pay his expenses. He has used all of the crops that I did not get. I have no account whatever of what he has used. All the account I have is what he has brought me, but he has not brought it all to me. I have allowed him to sell out of the crops, and buy other things with it. All I want or expect to get is $3,685, together with the interest. Of the several mortgages mentioned in the deed of Robinson to me, put in evidence, I was only interested in the last one,— the one to A. P. and *S. S. Lovejoy.*"

Testimony was given to the effect that the land was worth from $20 to $30 an acre; *Lovejoy* testifying that he did not consider it worth any more than the amount stated in the contract; that he was unwilling longer to hold the mortgage; "thought we had got about as far as the land would hold; that it was about as much as we wanted to carry on it." The said agreement was duly witnessed and acknowledged by both parties, but had not been recorded in the office of the register of deeds for Rock county, nor filed in the office of the proper town clerk. It appeared that the deed and agreement were given to secure a pre-

vious indebtedness against Robinson, the entire amount of which is stated in the agreement, and was included, it seems, in a former mortgage given by him on the farm.

The plaintiff recovered in the action against Robinson, April 25, 1892, $194.79, damages and costs. The amount paid into court by the garnishee was $247.60. The court found that the tobacco was planted, cultivated, grown, harvested, stored, and kept upon said land for said *Lovejoy* under the contract, and that he was at all times, from the planting of said tobacco until the sale and delivery thereof to the garnishee, the owner of the tobacco; that *Lovejoy* authorized Robinson to sell it for his account, but not as the property of, or for the account of, Robinson; and that the indebtedness was due from the garnishee to *Lovejoy*, and not to Robinson; and that the defendant *Lovejoy* was entitled to have the money paid over by the clerk to him (said *Lovejoy*); and judgment was rendered accordingly, and for costs against the plaintiff, and discharging said Holdredge from liability for the money paid into court. The plaintiff took proper exceptions to the findings, and appealed from the judgment.

For the appellant there was a brief by *Dunwiddie, Goldin & Wheeler*, and oral argument by *J. B. Dunwiddie*. They argued, among other things, that the clause in the contract as to *Lovejoy's* owning a portion of the crops until $1,000 of the principal was paid, was inserted merely as further security, and is void as against creditors for the reason that the crops intended to be covered thereby were not in existence when the contract was given; and is also void because neither the contract nor a copy thereof was filed in the office of the town clerk. *Lamson v. Moffat*, 61 Wis. 153; *First Nat. Bank v. Knowles*, 67 id. 373; *Comstock v. Scales*, 7 id. 159. The clause as to the possession of the premises, like the one as to the title of the crops, was inserted merely as further security for the payment of the $1,000

and interest, and being contrary to the actual fact in no way affects the question at issue as to the crops. *Hare v. Follet*, 61 Hun, 621.

*William Ruger*, for the respondent, contended, *inter alia*, that although a mortgage not conveying the mortgagor's right of possession is deemed to be a lien, not carrying any interest in the land, yet it is entirely competent for the mortgagor to convey the possessory right to the land, and in such case the mortgagee has an interest in the land in addition to his lien. Boone, Mortg. sec. 111; *Hennesy v. Farrell*, 20 Wis. 42; *Tenney v. State Bank*, id. 152, 162–3; *Roche v. Knight*, 21 id. 324. In this case the parties intended that both the right of possession and actual possession should be in *Lovejoy*, and that Robinson's occupancy or possession should be that of *Lovejoy*. *Lovejoy* would, therefore, have owned the crops raised, without express provision to that effect. Where the mortgagor of land transfers his right of possession, the mortgagee is clothed with an interest in the land, carrying ownership of crops so long as mortgagee retains his character of a mortgagee in possession. *Lanyon v. Woodward*, 55 Wis. 652; *Case v. Fish*, 58 id. 93–5, 100, 102; *State ex rel. State Bank v. Hastings*, 15 id. 75–7; *Andrew v. Newcomb*, 32 N. Y. 417; *Lewis v. Lyman*, 22 Pick. 437; 4 Am. & Eng. Ency. of Law, 895, 899, 200; *Esdon v. Colburn*, 28 Vt. 631; *King v. Housatonic R. Co.* 45 Conn. 226; *McCaffrey v. Woodin*, 65 N. Y. 459, 460, 464, 468; *Adams v. Bigelow*, 128 Mass. 365.

PINNEY, J. 1. There can be no doubt but that the deed and agreement, which were clearly given to secure the debt of Robinson to *Lovejoy*, constituted a mortgage. It is settled that whenever property is transferred, no matter in what form or by what conveyance, as a mere security for a debt, the person to whom the transfer is made takes merely as a mortgagee, and has no other rights or reme-

dies than the law accords to mortgagees. We have here an absolute deed, and a defeasance in a separate instrument, and the two constitute a mortgage. *Howe v. Carpenter*, 49 Wis. 702; *Brinkman v. Jones*, 44 Wis. 498; *Schriber v. Le Clair*, 66 Wis. 579; *Starks v. Redfield*, 52 Wis. 352; *Hoile v. McCulloch*, 58 Wis. 448; *Phelan v. Fitzpatrick*, *ante*, p. 240. Robinson remained the owner of the legal title, and *Lovejoy* had a mere security, not a title. He could acquire the title only upon foreclosure and sale, or by some arrangement with Robinson which would operate to extinguish his equity of redemption. It is impossible to hold that it was the intent that the deed and contract should so operate, and secure to Robinson merely a conditional right of purchase. There was no extinguishment of the pre-existing debt against Robinson. The amount he is to pay to obtain a deed is the precise amount of that debt, and Robinson still remains *Lovejoy's* debtor,— a circumstance, in itself, usually held decisive. But the testimony of *Lovejoy* is conclusive, and is, in substance, that " the taking of the contract was to get our pay for the debt he owed us," and that the amount of the previous indebtedness is stated in the contract. He testified, in effect, that his purpose in making the provision in the agreement in regard to the title to the crops was to get security, and so no one could take the crops if he had any other debts. The stipulation was not for a general surrender of possession by the mortgagor to the mortgagee, but is special in character and purpose; and the possession was to remain in *Lovejoy* only until $1,000 of the principal sum, and all matured interest, should be paid. But it is clear that it was intended that Robinson should remain, as he did *in fact*, in possession as he had theretofore; for it is stipulated that in case of default on his part he " would forthwith deliver up the said premises " to the said *Lovejoy*. The provision in question, when fairly construed, amounts to no more

than an attempted mortgage or pledge of the crops that might be thereafter planted and raised on the premises, until the $1,000 and matured interest should be paid,— a right which would not be secured by an ordinary mortgage, and which was not to continue until the remainder of the debt should be paid. The objections to the claim set up by *Lovejoy* to the fund paid into court out of the crop planted and raised three years after the execution of the agreement are insuperable.

2. Robinson could not grant or mortgage that which he did not actually or potentially own, either absolutely or by way of security. The crop raised on the farm by him in 1890 was not in existence when the agreement was made, either actually or potentially; and Robinson could not, therefore, grant it by way of security. The seed had not been planted and had not germinated so as to constitute a possibility coupled with an interest which might be the subject of sale or transfer. Conceding that, within some of the authorities cited by respondent, the agreement would be operative when the crop should come into existence (*McCaffrey v. Woodin*, 65 N. Y. 459), or would amount to a revocable license to *Lovejoy* to enter on the premises and take the after-acquired crops according to the terms of the license, or that it might be made operative by a delivery or other equivalent of the crops after they were raised, still it is plain that in this view of the case the agreement, as a title or charge on the crops, was inoperative in law and invalid as to creditors. That the provision in question would be invalid as to crops thereafter to be planted was settled in *Comstock v. Scales*, 7 Wis. 159, and reaffirmed in *Lamson v. Moffat*, 61 Wis. 153. The subject matter not being in existence, there was nothing for the agreement to operate on until the crops were raised and delivered. The case of a lien reserved in like manner by a landlord in a lease, upon crops to be raised by a ten-

ant for rent to accrue, has been thought to be an exception to the ordinary rule that a mortgage upon after-acquired property, without some further act to attach the property to it when it is acquired or comes into existence, would be void. *Andrew v. Newcomb*, 32 N. Y. 417; *Reynolds v. Ellis*, 103 N. Y. 115. The doctrine of *Comstock v. Scales* has been strictly adhered to in this state in many subsequent cases. *Chynoweth v. Tenney*, 10 Wis. 397; *Single v. Phelps*, 20 Wis. 398; *Mowry v. White*, 21 Wis. 417. In *Hunter v. Bosworth*, 43 Wis. 590, the court was appealed to strongly to reverse the rule of *Comstock v. Scales*, but without effect. *Funk v. Paul*, 64 Wis. 35, 38; *First Nat. Bank v. Knowles*, 67 Wis. 386. In *Single v. Phelps*, 20 Wis. 398, where there was no subsequent act ratifying such security,— as delivery of the property after it came into existence, or setting it apart with intent that the mortgage should apply to and bind it,— it was held that the filing of such a mortgage in the town clerk's office would be wholly inoperative, and would furnish no notice that any property had been subsequently acquired, or that any subsequent act had been performed, necessary to make it operative in respect thereto.

It is plain, therefore, that such a mortgage, even though filed in the proper town clerk's office, would be wholly inoperative as to creditors or subsequent purchasers, unless, before their rights attached, the property was delivered to the mortgagee, or the subsequent act necessary to make it valid was performed; and this would seem to render actual possession necessary by the mortgagee of such property, in order to be able to maintain his rights in respect to it. For want of such actual and continued possession of the property claimed to be affected by it, the agreement was absolutely void as to the creditors of Robinson, whether prior or subsequent to its date or to the time when the crop was raised. R. S. sec. 2313. It is sufficient

that the relation of debtor and creditor existed between the plaintiff and Robinson at some time while the goods were in the actual possession of the debtor. *Reynolds v. Ellis,* 103 N. Y. 115. The law does not favor secret liens on property, such as .the one asserted by *Lovejoy* to the crop in question, on account of the deceitful and fraudulent use that may be made of them, to the prejudice of creditors and subsequent purchasers. Robinson remained in possession of the premises, and of the crops raised from time to time thereon, and apparently as the owner of them, in like manner as before the execution of the agreement; and this fact furnished the ready basis of credit by which persons might be drawn in to deal with him on the faith of his ostensible ownership. And if it be conceded that the agreement was valid and operative as between Robinson and *Lovejoy,* it certainly was not as against the former's creditors, either prior or subsequent, for reasons already stated.

3. In addition to the objections already noticed, as against Robinson's creditors the stipulation in the agreement in respect to the crops was fraudulent and void in law, for the reason that there was reserved in it to Robinson, as mortgagor, the right to such portion of the crops raised from year to year as might be necessary to feed the stock on the farm, belonging to him, and such as he might use for food in his family, to be apportioned and set apart by the parties when the crop should be in readiness; thus reserving to him, as against his creditors, a substantial trust for his benefit in every crop that might be raised under this arrangement, and which it was at the time contemplated should continue at least ten years. The case, in principle, is not distinguishable from that of *Blakeslee v. Rossman,* 43 Wis. 116. The validity of such a security is not an open question in this state. It is not a question of intent, for the arrangement necessarily tends to hinder,

delay, and defraud creditors, and the fraud which the law imputes to it is conclusive, and no amount of evidence of good intent will suffice to remove the fraudulent taint imputed to it as a matter of law. *Anderson v. Patterson*, 64 Wis. 557.

. It is impossible to overlook or ignore the manifest fraudulent character of this agreement, as against creditors. If sustained, it would furnish an apt and ready device to cheat and defraud the creditors of every person engaged in similar pursuits, and in embarrassed circumstances, so that he might take to his own use a large portion of the annual profits of his lands, and hold them in defiance of creditors, if he happened to have a friendly mortgagee at hand, willing to enter into such an arrangement with him as the one disclosed by this record. *Mr. Lovejoy* had no right to use his debt and mortgage security for any such improper purpose, and his testimony shows that it was intended, in point of fact, that this instrument should have precisely the effect that we ascribe to it in law, namely, " so that no one else could take hold of them [the crops] if he had any other debts. I allowed him to take out of the crops he raised a sufficient amount to feed his stock he had on the premises, and *a sufficient amount, each year, to take care of his family and to pay his expenses.* We have never had any particular settlement. He has used all the crops that I did not get. I have no account whatever of what he used. . . . I have allowed him to sell out of the crops, and buy other things with it." It being incontestable that this provision was given by way of security, and has the effect of a mortgage on the crops to be thereafter raised, it is impossible to sustain it, as against the claims of the creditors of Robinson, either prior or subsequent, for manifestly it was aimed against both, and was to be operative, as already observed, for the period of at least ten years. It is not only fraudulent in law, but the

evidence tends strongly to show that it is fraudulent in fact. It is but a fair inference that it was intended for the purpose for which the parties have used it, and is of such a mischievous and reprehensible character that we cannot hesitate to condemn it. For these reasons the judgment of the court, awarding the money paid into court by the garnishee to the defendant *Lovejoy*, was erroneous and must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to give judgment in favor of the plaintiff for the fund paid into court, or against the party to whom it has been paid, for the amount of his judgment and costs.

CASSODAY, J. I have no doubt a valid stipulation may be inserted in a real-estate mortgage, whereby the mortgagee may be deemed to be in possession, and the mortgagor, as his agent, continue to occupy, cultivate, and dispose of the crops, and, after paying the expenses for doing so, apply the net proceeds in payment of the mortgage debt. Especially may this be done where, as here, the old mortgage is overdue and inadequate security, and a new equitable mortgage containing such stipulation is taken in lieu thereof. The difficulty with the stipulation in question is that Robinson thereby reserved to himself such portion of the crops raised on the premises as might be necessary to feed his stock and support his family, without any regard to the expense of raising such crops. This seems to be a conveyance or transfer in writing, therefore, of goods, chattels, or things in action, made in trust for the use of the person making the same, and hence, under the statute, is void against the creditors, existing or subsequent, of said Robinson. Sec. 2306, R. S. It also appears to be in conflict with the statute which declares, in effect, that every conveyance or assignment, in writing, of any

estate or interest in lands or in goods, or of any rents or profits issuing therefrom, and every charge thereon, made with the intent to hinder, delay, or defraud the creditors of the person making the same, shall be void. Sec. 2320. For these reasons I concur in the decision in this case.