O'NIEL, Appellant, vs. WM. B. H. KERR COMPANY, Respondent.

*January 31—February 21, 1905.*

*Assignment of fund not in existence: Equitable lien.*

A writing given by H. to K., authorizing one M. to pay to K. all
sums to become due upon subsequent sales of milk by H. to M.—
there being an expectation that such sales would be made, but
no binding contract between H. and M. to that effect—did not
pass any legal interest in any such sum not actually paid over
to K., or give him any equitable lien thereon, as against a sub-
sequent garnishment of M. by another creditor of K.

APPEAL from a judgment of the circuit court for Washing-
ton county: JAMES J. DICK, Circuit Judge. *Reversed.*

The plaintiff brought this action on a note given by the
principal defendant, Heinrich Helmke, and recovered judg-
ment thereon, and instituted this garnishment action to aid
in the collection of the amount due on such judgment on
the 2d day of January, 1902. The garnishee defendant,
Michael Murphy, answered, alleging that at the time he was
served with the summons herein there was a balance due from
him on account of milk delivered by defendant at his cheese
factory between March 22, 1901, and January 2, 1902, in the
sum of $168.15; that the *Wm. B. H. Kerr Company,* a cor-
poration, claimed this balance under a writing executed by
Helmke in its favor, and directed to the garnishee, Murphy,
and received and accepted by him at about the time it is dated.
The writing is as follows:

"North Lake, Wis., March 29, 1901.
"For the purpose of obtaining credit from the *Wm. B. H.
Kerr Company,* I hereby authorize you to pay said Wm. B.
H. Kerr all my part of the milk delivered to your factory.
"To Mike Murphy.        HEINRICH HELMKE."

It appeared that the writing was executed for the purpose
of obtaining credit for goods and merchandise to be purchased

from the *Kerr Company,* and that the defendant Helmke purchased goods from the company between the date of the order and the service of the summons aggregating in amount a sum largely in excess of the total amount due for all the milk he delivered to Murphy during that time. At different times between August 1, 1901, and January 2, 1902, Murphy, out of what was due Helmke for milk delivered at the factory, had paid the *Kerr Company* a total of $135. The court found that these payments were made under the arrangement between Helmke, the *Kerr Company,* and Murphy. It appeared that no contract existed between Helmke and Murphy whereby Helmke agreed to deliver his milk to Murphy for any future period, nor did it appear that Murphy was obligated to receive his milk for any period after March 29, 1901. Upon the application of the defendant Murphy the sum of $168.15 was paid into court. The *Kerr Company* was made a party defendant to the action, who interpleaded, claiming the amount paid into court under the order of March 29th, and the garnishee action and all further proceedings as to the garnishee were discontinued and dismissed. The court awarded judgment in favor of the impleaded defendant, the *Kerr Company,* holding that the order was an effective agreement to transfer or create a lien on all of Helmke's interest in the money due him for milk delivered to Murphy after the order, and covering the proceeds in Murphy's hands when garnishment proceedings were commenced. This is an appeal from such judgment.

For the appellant there was a brief by *Sawyer & Sawyer,* and oral argument by *E. W. Sawyer.*

For the respondent there was a brief by *Frame & Blackstone,* and oral argument by *H. J. Frame.*

SIEBECKER, J. The controversy between the parties is over the legal effect of the order of defendant Helmke, whereby he authorized the garnishee, Murphy, to pay the *Kerr Company*

all the money that might become due for milk delivered thereafter to Murphy's factory. Does this order operate either as an assignment of, or create an equitable lien on, the proceeds of the milk delivered to Murphy after the order was given? The court found that since this order was given by Helmke to obtain credit from the *Kerr Company* for the purchase of goods and merchandise at their store, and such credit was extended to him, and payments were made on this account out of the amount due for milk delivered after the written order had been given, it followed that the *Kerr Company* had a right to the amount in the garnishee's possession when the action was commenced.

The legal effect of transactions like this has often been discussed and considered by the courts, resulting in conflicting conclusions upon the subject. There is practical unanimity of opinion that, in law, there is no transfer of title or interest to such property; but the courts are not agreed upon the question whether such an agreement creates a lien of an equitable character attaching to and bringing the property within the terms of the agreement upon the property coming into existence and possession of the party attempting to transfer it. The case, however, is not one of first impression before this court. It was presented in the early case of *Chynowelh v. Tenney,* 10 Wis. 397, and a number of subsequent cases. Mr. Justice PAINE, in delivering the opinion of the court in that case, observed:

"The effect to be given to conveyances which purport to grant property to be thereafter acquired by the grantor has of late occupied the attention of courts to a considerable extent, and does not seem to be entirely settled. The maxim of the common law that 'a man cannot grant or charge that which he hath not,' if applied to it without qualification, would readily determine it."

After an examination of the cases the court declares that a conveyance of after-acquired property is "inoperative to

transfer the property," as between the parties, "without some new act on the part of the grantor ratifying it after he had acquired it." Id. 401. This doctrine was applied by the court to that case, which dealt with a chattel mortgage transfer. It is recognized, however, that it applies with equal force to sales of and charges upon personal property. The ruling in this and subsequent cases is upon the ground that a party must have an existing vested interest in the property sought to be conveyed, to give the transfer effect in the law, and that a mere possibility or expectancy of acquiring property, "not coupled with an interest, is insufficient." It is well settled that a potential interest in property is sufficient to support such a transfer. This principle is illustrated in the case of *Low v. Pew,* 108 Mass. 347, wherein the court applied it to assignments of future wages or earnings, holding that an assignment of future wages, where there is no contract for service, is invalid; on the other hand, if a person is under contract for service, he may assign his future earnings growing out of such contract. "The distinction between the cases is that in the former the future earnings are a mere possibility, while in the latter the possibility of future earnings is coupled with an interest, and the right to them, though contingent and liable to be defeated, is a vested right."

Under the facts of this case, Helmke was under no obligation to deliver milk to Murphy after the date of the order. The expectation that he would do so may have existed, but was coupled with no vested interest. This made it a mere possibility, and created no actual or potential interest in any of the proceeds of the milk he afterwards delivered; thus rendering the order ineffectual as a legal transfer. *Farmers' L. & T. Co. v. Commercial Bank,* 11 Wis. 207; *Single v. Phelps,* 20 Wis. 398; *Hunter v. Bosworth,* 43 Wis. 583; *Lamson v. Moffat,* 61 Wis. 153, 21 N. W. 62; *Merchants' & M. S. Bank v. Lovejoy,* 84 Wis. 601, 55 N. W. 108; *Huling v. Cabell,* 9 W. Va. 522; *Cook v. Corthell,* 11 R. I. 482.

It is argued that, if the order was not a transfer of such proceeds, it should be given legal efficacy in the nature of an executory contract creating a lien on this fund, which authorized the *Kerr Company* to take and hold the money as against the defendant and his creditors. This proposition was also considered and passed upon in the *Chynoweth Case,* and it was held that such an attempted transfer of after-acquired property is not effectual to create a lien in equity. *Merchants' & M. S. Bank v. Lovejoy, supra; Lamson v. Moffat, supra; Brown v. Neilson,* 61 Neb. 765, 86 N. W. 498. The logical deduction to be made from the authorities upon the subject in this court is that the agreement under which the *Kerr Company* asserts its right to the money paid into court does not pass any legal interest, or give any equitable lien on the fund. The only right the *Kerr Company* acquired under the order was a license to obtain the money due Helmke while it was in Murphy's possession, and that when it had taken such possession it was with the consent of Helmke, and its title became good to the amount taken (*Chynoweth Case,* 10 Wis. 407), but that it acquired no right to the fund while in Murphy's possession as against the plaintiff, who now claims the proceeds as an attaching creditor of the defendant Helmke. The plaintiff was entitled to judgment directing that the money now in court be paid to him in satisfaction of his judgment against Helmke.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions that the plaintiff be awarded judgment for the sum paid into court by the garnishee.